## A. MAGNANO CO. *v.* HAMILTON, ATTORNEY GENERAL OF WASHINGTON, ET AL.

No. 589.   Argued March 7, 1934.—Decided April 2, 1934.

*Mr. Otto B. Rupp,* with whom *Messrs. Alfred J. Schweppe, A. M. Davis,* and *W. R. Brown* were on the brief, for appellant.

*Mr. E. P. Donnelly,* Assistant Attorney General of Washington, and *Mr. Philip D. Macbride,* with whom *Mr. G. W. Hamilton,* Attorney General, was on the brief, for appellees.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

Appellant assails as invalid a statute of the State of Washington which levies an excise tax of fifteen cents per pound on all butter substitutes sold within the state. Every distributor of such butter substitutes is required to file a duly acknowledged certificate with the Director of Agriculture, containing the name under which the distributor is transacting business within the state and other specified information. Sale of any butter substitute is forbidden until such certificate is furnished. The distributor must render to the Director of Agriculture, on the fifteenth day of each month, a sworn statement of the

number of pounds of butter substitutes sold during the preceding calendar month. Section 10 of the act provides that the tax shall not be imposed on butter substitutes when sold for exportation to any other state, territory, or nation; and any payment or the doing of any act which would constitute an unlawful burden upon the sale or distribution of butter substitutes in violation of the Constitution or laws of the United States is by § 13 excluded from the operation of the act. Violation of any provision of the act is denounced as a gross misdemeanor.

Appellant is a Washington corporation, and has for many years been engaged in importing and selling "Nucoa," a form of oleomargarine. Prior to the passage of the act, it had derived a large annual net profit from sales made within the state. Since then, claiming the tax to be prohibitive, it has made no intrastate sales and no effort to do so. "Nucoa" is a nutritious and pure article of food, with a well established place in the dietary.

Suit was brought to enjoin the enforcement of the act, on the ground that it violates the Federal Constitution in the following particulars: (1) that the imposition of the tax has the effect of depriving complainant of its property without due process of law and of denying to it the equal protection of the laws, in violation of the Fourteenth Amendment; (2) that the tax is not levied for a public purpose, but for the sole purpose of burdening or prohibiting the manufacture, importation and sale of oleomargarine, in aid of the dairy industry; (3) that the act imposes an unjust and discriminatory burden upon interstate commerce; and (4) that it interferes with the power of Congress to levy and collect taxes, imposts and excises, in violation of Art. I, § 8.

The case came before a statutory court of three judges, under § 266 of the Judicial Code, as amended, 28 U.S.C., § 380, first upon an application for an interlocutory injunction, which was denied, 2 F.Supp. 414, and subse-

quently for final hearing, at the conclusion of which that court made written findings of fact and conclusions of law, as required by Equity Rule 70½, and entered a final decree dismissing the bill. 2 F.Supp. 417.

*First.* We put aside at once all of the foregoing contentions, except the one relating to due process of law, as being plainly without merit. 1. In respect of the equal protection clause it is obvious that the differences between butter and oleomargarine are sufficient to justify their separate classification for purposes of taxation. 2. That the tax is for a public purpose is equally clear, since that requirement has regard to the use which is to be made of the revenue derived from the tax, and not to any ulterior motive or purpose which may have influenced the legislature in passing the act. And a tax designed to be expended for a public purpose does not cease to be one levied for that purpose because it has the effect of imposing a burden upon one class of business enterprises in such a way as to benefit another class. 3. The act, considered as a whole, clearly negatives the idea that a burden is imposed upon interstate commerce, as the court below held. The tax is confined to sales within the state, and (§§ 10 and 13, *supra*) has no application to sales of oleomargarine to be either imported or exported in interstate commerce. 4. The contention that the act interferes with the taxing power of the United States seems to be based upon the supposition that the state tax is so great that it will put an end to the sale of oleomargarine within the State of Washington, and thereby destroy a potential subject of federal taxation. Assuming such a consequence and putting other questions aside, the effect of it upon appellant would be so remote, speculative and indirect as to afford appellant no basis for invoking the powers of a court of equity. Compare *Massachusetts* v. *Mellon,* 262 U.S. 447, 487; *Florida* v. *Mellon,* 273 U.S. 12, 17–18.

*Second.* Except in rare and special instances,\* the due process of law clause contained in the Fifth Amendment is not a limitation upon the taxing power conferred upon Congress by the Constitution. *Brushaber* v. *Union Pac. R. Co.,* 240 U.S. 1, 24. And no reason exists for applying a different rule against a state in the case of the Fourteenth Amendment. *French* v. *Barber Asphalt Paving Co.,* 181 U.S. 324, 329; *Heiner* v. *Donnan,* 285 U.S. 312, 326. That clause is applicable to a taxing statute such as the one here assailed only if the act be so arbitrary as to compel the conclusion that it does not involve an exertion of the taxing power, but constitutes, in substance and effect, the direct exertion of a different and forbidden power, as, for example, the confiscation of property. Compare *McCulloch* v. *Maryland,* 4 Wheat. 316, 423; *Child Labor Tax Case,* 259 U.S. 20, 37 *et seq.; McCray* v. *United States,* 195 U.S. 27, 60; *Brushaber* v. *Union Pac. R. Co., supra,* 24–25; *Henderson Bridge Co.* v. *Henderson City,* 173 U.S. 592, 614–615; *Nichols* v. *Coolidge,* 274 U.S. 531, 542. Collateral purposes or motives of a legislature in levying a tax of a kind within the reach of its lawful power are matters beyond the scope of judicial inquiry. *McCray* v. *United States, supra,* 56–59. Nor may a tax within the lawful power of a state be judicially stricken down under the due process clause simply because its enforcement may or will result in restricting or even destroying particular occupations or businesses (*Loan Association* v. *Topeka,* 20 Wall. 655, 663–664; *McCray* v. *United States, supra,* 56–58, and authorities cited; *Alaska Fish Co.* v. *Smith,* 255 U.S. 44, 48–49; *Child Labor Tax Case, supra,* 38, 40–43), unless, indeed, as already indicated, its neces-

---

\* See *Brushaber* v. *Union Pacific R. Co. Co.,* 240 U.S. 1, 24–25; *Nichols* v. *Coolidge,* 274 U.S. 531, 542–543; *Heiner* v. *Donnan,* 285 U.S. 312, 325–328. Compare *Schlesinger* v. *Wisconsin,* 270 U.S. 230, 239–240.

sary interpretation and effect be such as plainly to demonstrate that the form of taxation was adopted as a mere disguise, under which there was exercised, in reality, another and different power denied by the Federal Constitution to the state. The present case does not furnish such a demonstration.

The point may be conceded that the tax is so excessive that it may or will result in destroying the intrastate business of appellant; but that is precisely the point which was made in the attack upon the validity of the ten per cent. tax imposed upon the notes of state banks involved in *Veazie Bank* v. *Fenno,* 8 Wall. 533, 548. This court there disposed of it by saying that the courts are without authority to prescribe limitations upon the exercise of the acknowledged powers of the legislative departments. " The power to tax may be exercised oppressively upon persons, but the responsibility of the legislature is not to the courts, but to the people by whom its members are elected." Again, in the *McCray* case, *supra,* answering a like contention, this court said (p. 59) that the argument rested upon the proposition " that, although the tax be within the power, as enforcing it will destroy or restrict the manufacture of artificially colored oleomargarine, therefore the power to levy the tax did not obtain. This, however, is but to say that the question of power depends, not upon the authority conferred by the Constitution, but upon what may be the consequence arising from the exercise of the lawful authority." And it was held that if a tax be within the lawful power of the legislature, the exertion of the power may not be restrained because of the results to arise from its exercise.

In *Alaska Fish Co.* v. *Smith, supra,* 48–49, a statute of Alaska levying a heavy license tax upon persons manufacturing fish oil, etc., was upheld as constitutional against the contention that it would prohibit and confiscate plain-

46

tiff's business. "Even if the tax," the court said, "should destroy a business it would not be made invalid or require compensation upon that ground alone. Those who enter upon a business take that risk. . . . The acts must be judged by their contents not by the allegations as to their purpose in the complaint. We know of no objection to exacting a discouraging rate as the alternative to giving up a business, when the legislature has the full power of taxation."

In the *Child Labor Tax Case, supra,* this court, in holding unconstitutional the provisions of the Revenue Act of February 24, 1919, imposing a tax upon the employment of child labor, fully recognized the foregoing limitations upon the judicial authority; but declared that the act constituted an attempt to regulate a matter exclusively within the control of the state, and that, although the exaction was called a tax, it was, in fact, not a tax but a penalty exacted for the violation of the regulation. "Taxes are occasionally imposed," it was said (p. 38), "in the discretion of the legislature on proper subjects with the primary motive of obtaining revenue from them and with the incidental motive of discouraging them by making their continuance onerous. They do not lose their character as taxes because of the incidental motive. But there comes a time in the extension of the penalizing features of the so-called tax when it loses its character as such and becomes a mere penalty with the characteristics of regulation and punishment. Such is the case in the law before us."

The statute here under review is in form plainly a taxing act, with nothing in its terms to suggest that it was intended to be anything else. It must be construed, and the intent and meaning of the legislature ascertained, from the language of the act, and the words used therein

are to be given their ordinary meaning unless the context shows that they are differently used. *Child Labor Tax Case, supra,* 36. If the tax imposed had been five cents instead of fifteen cents per pound, no one, probably, would have thought of challenging its constitutionality or of suggesting that under the guise of imposing a tax another and different power had in fact been exercised. If a contrary conclusion were reached in the present case, it could rest upon nothing more than the single premise that the amount of the tax is so excessive that it will bring about the destruction of appellant's business, a premise which, standing alone, this court heretofore has uniformly rejected as furnishing no juridical ground for striking down a taxing act. As we have already seen, it was definitely rejected in the *Veazie Bank* case, where it was urged that the tax was " so excessive as to indicate a purpose on the part of Congress to destroy the franchise of the bank "; in the *McCray* case, where it was said that the discretion of Congress could not be controlled or limited by the courts because the latter might deem the incidence of the tax oppressive or even destructive; in the *Alaska Fish* case, from which we have just quoted; and in the *Child Labor Tax Case,* where it was held that the intent of Congress must be derived from the language of the act, and that a prohibition instead of a tax was intended might not be inferred solely from its heavy burden.

From the beginning of our government, the courts have sustained taxes although imposed with the collateral intent of effecting ulterior ends which, considered apart, were beyond the constitutional power of the lawmakers to realize by legislation directly addressed to their accomplishment. Those decisions, as the foregoing discussion discloses, rule the present case.

*Decree affirmed.*