J. Courtney McGroarty, J.
Plaintiff, an attorney, by order to show cause containing a stay against the city from enforcing collection of the unincorporated business income tax against self-employed practitioners, seeks a declaration of unconstitutionality of Local Law No. 36 of the Local Laws of the City of New York passed by the City Council June 22,1971 and approved by the Mayor on June 30, 1971 (published in the City Record, July 2, 1971, p. 3111). Said local law, effective immediately and applicable to all taxable years beginning on or after January 1, 1971, repeals the exemption heretofore enjoyed by self-employed doctors, lawyers, architects and practitioners “ of any other profession” from the unincorporated business tax of the City of New York. The exemption of employees, as a class, is unaffected.
The spearhead of plaintiff’s attack is that the repealing statute discriminates against “ self-employed professionals in favor of *1022 salaried professionals ” and that including professions within the classification of business creates a double tax on the self-employed professionals; thereby denying “plaintiff and those similarly situated the equal protection of the law ’ ’ and takes “ their property without due process of law.”
Plaintiff annexes in support of his application copies of the papers submitted by the Association of the Bar of the City of New York, the New York County Lawyers Association and the New York State Bar Association to the New York City Council in opposition to the enactment of the repealing statute. The Brooklyn Bar Association’s request for permission to appear as amicus curiae is granted and its memorandum of law will be considered as a part of the moving papers.
In 1966, chapter 772 of the Laws of the State of New York was enacted ‘ ‘ to enable any city having a population of one million or more to raise tax revenue by authorizing the imposition of taxes # # * on unincorporated businesses ”. An unincorporated business was defined as “ any trade, business or occupation ’ ’. Specifically excluded from such definition were ‘ ‘ The performance of services by an individual as an employee ’ ’ and “ The practice of law, medicine, dentistry or architecture, and the practice of any other profession ”. The tax to be imposed was to “be in addition to any other taxes imposed” and ‘ ‘ no deduction shall be allowed for income taxes imposed by the city, this state or any other taxing jurisdiction ” (L. 1966, ch. 772, preamble, §§ 101, 103; § 106, subd. [4]).
Pursuant to chapter 772, the city enacted its “ City Unincorporated Business Income Tax” (Local Laws, 1966, No. 22 of the City of New York; Administrative Code of City of New York, § S46-1.0 et seq.) and made it applicable to income beginning with the calendar year 1966. The language of chapter 772 was adopted by the city to define the tax, the exemptions therefrom and that the tax was in addition to other taxes, without any deduction of income taxes.
On June 9, 1971, chapter 412 of the Laws of the State of New York was enacted “ ‘ to enable any city having a population of one million or more to raise tax revenue ’ and 1 to repeal article two-B of the general city law, authorizing the imposition of a general business and financial tax by such city ’, in relation to including professions in the definition of unincorporated businesses subject to the unincorporated business tax * * * and in relation to repealing the specific exclusion of certain professions from such tax” (Preamble). Section 1 of chapter 412 now defines an unincorporated business as ‘1 any trade, business, profession or occupation.” (§ 103, subd. [a]). *1023 In addition subdivision (c) of chapter 412 repealed the exclusion of the practice of a profession by all except employees. (§ 103, subd. [c].) The act was made effective immediately and applicable to all tax years beginning with January 1, 1971. The city followed chapter 412 with the enactment of Local Law No. 36 of the Local Laws of 1971 (being here attacked as unconstitutional), again adopting the language of the Legislature.
The power to tax is an inherent right of government. It is not dependent on constitutional grant, for without it government could not exist or perform its functions. ‘1 While it may be regulated and limited by the fundamental law, it exists ‘ independently of it as a necessary attribute of sovereignty ’ ” (People ex rel. Hatch v. Reardon, 184 N. Y. 431, 443, affd. 204 U. S. 152). The exercise of such right may bear more heavily on various segments of our society for “ all taxation is arbitrary * * * it compels the citizen to give up a part of his property; it is generally discriminating, for otherwise everything would be taxed, which has never yet been done * * * and frequently it is unreasonable, but that does not make it unconstitutional, even if the result is double taxation” (People ex rel. Hatch v. Reardon, supra, p. 443). It “ may not be successfully contended that the Legislature lacks the power to impose, or to delegate to a municipality power to impose, what is called ‘ double taxation ” ’ if the ‘1 intention on the part of the Legislature * * * be clearly and distinctly expressed ” (SoconyVacuum Oil Co. v. City of New York, 247 App. Div. 163, 165, affd. 272 N. Y. 668). The “ pressures for new revenues become more and more insistent,” and the “means of meeting them present to a state not only the baffling task of tapping fresh sources of revenue but of doing so with due regard to a state’s existing taxing system.” Thus a supplementary income tax oftentimes becomes a matter of necessity and the court may not concern itself with the ‘ ‘ descriptive pigeon-hole into which a state court puts a tax * * * in determining the constitutional significance of the exaction. ’ ’ (Wisconsin v. J. C. Penny Co., 311 U. S. 435, 442, 443).
The unincorporated business tax, as indicated in its preamble, was conceived and enacted as a revenue raising measure on behalf of cities having a million or more population. The State Legislature was sensitive to the needs of our larger cities for additional funds. Under our developing social consciousness the requirements for expanded services and facilities for the welfare of our citizenry are limited only by the economic ability to furnish them. That the unincorporated business tax *1024 is basically an additional levy on income is recognized by the very fact that the 1966 act specifically stated that it was to “ be in addition to any other taxes imposed ” (§ 101) and that “No deduction shall be allowed for income taxes.” (§ 106, subd. [4]). This tax was considered by the Court of Appeals in People ex rel. Tower v. State Tax Comm. (282 N. Y. 407) but not on constitutional grounds. Its validity was not attacked; but what was sought was an interpretation of its exclusion of members of the professions to include a customhouse broker. Significantly, the court stated (p. 411): “the business of a customhouse broker may be conducted by a corporation * * * by section 386 the Legislature chose to exempt the professions of the law, medicine, dentistry and architecture for the express reason that 1 under existing law [they] cannot be conducted under corporate structure. ’ The reason for such exemptions thus stated in the statute makes clear the Legislature’s intent to reach by tax those vocations which, if conducted in corporate form, would be the subject of taxation.”
This court will not determine plaintiff’s application on the narrow ground that since members of the professions may now incorporate the repeal of the exemption may not be assailed.
Exemptions of a class from tax is wholly within the province of the Legislature so long as there is some underlying reason. “Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation * * * inequalities which result from a singling out one particular class for taxation or exemption, infringe no constitutional limitation” (Carmichael v. Southern Coal Co., 301 U. S. 495, 509). The basis of the selection of exemption need only be such ‘ ‘ that the classification must not be 1 so purely arbitrary as to have no reason, not even an insufficient or merely plausible reason, to justify it.’ ” Thus classifications for taxation purposes are valid so long as they are not “ ‘ based on fictions or on arbitrary or unreasonable assumptions of fact ’ or unless they indicate ‘ hostile or oppressive discrimination ’ ” (Roosevelt Raceway v. County of Nassau, 18 N Y 2d 30, 39, app. dsmd. for want of a substantial Federal question, 385 U. S. 453).
Stating the rule as a positive postulate, classifications must be presumed to rest on a rational basis ‘ ‘ if there is any conceivable state of facts which would support it (Carmichael v. Southern Coal Co., supra, p. 509) and as observed by the court in Tax Comrs. v. Jackson (283 U. S. 527, 537-538) “ Our duty is to sustain the classification adopted by the legislature if there are substantial differences between the occupations separately classified. Such differences need not be great.”
*1025 The crucible residue to be analyzed by this court is whether the removal of the exemption for the professions “is purely arbitrary,” “based on fictions” indicative of “hostile or oppressive, discrimination ” and therefore constitute a denial of equal protection of the law and a taking of property without due process of law.
The retention of the exemption for employees is a general exemption for all employees, be he a plumber’s helper or a moderately salaried lawyer, doctor, dentist or architect or be he a highly-paid employee. His status as employee is still the same. His earnings may be fixed, while those of his self-employed employer may fluctuate to a greater or lesser degree to the extent that there may be substantial profits and earnings (the envy of the employee) or none at all. Nevertheless as stated by Mr. Justice Jackson in Walters v. City of St. Louis (347 U. S. 231, 236-237): “ Classification of earned income as against profits is not uncommon * * * It is a classification employed extensively in federal taxation * * * We cannot say that a difference in treatment of the taxpayers deriving income from these different sources is per se a prohibited discrimination * * * In view of widespread taxing practices, we cannot say that this difference is insignificant or fanciful.”
It is to be noted that in the Walters case the employees complained of the difference in treatment and lack of equal protection under the law.
Equal protection, however, does not require equal application of the tax to all persons. It ‘ ‘ has been recognized from the beginning to select some and omit other possible subjects of taxation, to select one calling and omit another, to tax one class of property and to forbear to tax another ’ ’ violates no constitutional proscriptions. In fact, it “‘may impose different specific taxes upon different trades and professions ’ ” (Flint v. Stone Tracy Co., 220 U. S. 108, 158, 160). Our own Legislature has been held to have ‘ ‘ the exclusive power to tax, including the power to determine the class of persons to be taxed * * * which it may delegate to its municipal subdivisions, including the City of New York ” (Matter of United States Steel Corp. v. Gerosa, 7 N Y 2d 454, 459).
The precise problem here presented was considered in Lougee v. New Mexico Bur. of Revenue Comr. (42 N. M. 115). The court, in considering the appellant’s contentions, stated (pp. 133,134 and 135:
‘ ‘ ‘ Appellant submits to this court that a classification of lawyer’s income to be made subject to a tax upon his services, if his receipts are called a fee or a retainer, but excluded if *1026 such service receipts are called wages or salary, is an arbitrary and discriminating classification ’ * * *
“ The act provides for a tax against persons engaged in certain businesses and professional work, under various classifications and at different rates (p. 133) * * *
‘ ‘ Wage earners and salaried employees are exempt * * * ‘ There are exempted from the taxes imposed by this act the following: * * * (d) Income received in the form of ordinary wages or salaries ’ * * * The only possible relation that could exist between the classification under which appellant comes and that of wage earners and salaried employees is that in a few instances attorneys and other professional men are paid salaries for professional work. But there was no intention on the part of the Legislature to exempt such professional men or women as a class. They are included in a larger class of people, principally laborers who ordinarily are not business people. It is impossible that there should not be some inequality; and by singling out a particular class, as an attorney who receives a salary, from the large class of wage earners and salaried employees, some inequality may be shown ; but this does not infringe upon appellant’s constitutional rights. It is not just the salaried attorney or other professional person that is exempt; but all persons included under the classification of wage earners and salaried employees, (p. 134).
“ The classification is reasonable * * *
“ The fact that lawyers are officers of the court and that the profession of law is not ‘ a money getting business,’ * * * is no good reason why they should be exempt from taxation.” (p. 135).
The contention that the repeal of the exemption will result in the tax burden falling more heavily on the professions and is therefore oppressive and objectionable is one that had been rejected in years long past. In Flint v. Stone Tracy Co. (220 U. S. 108, 168-169, supra) the court disposed of such an argument by citing from Veazie Bank v. Fenno (8 Wall. 533) as follows: “ The power to tax may be exercised oppressively upon persons, but the responsibility of the legislature is not to the court's, but to the people by whom its members are elected”; and commenting further on the request for court interference to prevent such consequences, the court stated (p. 169): “No such authority has ever been invested in any court. The remedy for such wrongs, if such in fact exist, is in the ability of the people to choose their own representatives, and not in the exertion of unwarranted powers by courts of justice ”.
*1027 The repeal by the city of the exemption to the self-employed members of the professions does not constitute a denial to them of equal protection under the law. They are equally included with all other tradesmen, whether of high or low income brackets, to share the tax burden.
The further claim that the said 1971 amendment to the act constitutes a taking of property without due process of law is similarly without merit. Plaintiff’s moving affidavit affirmatively alleges that 1 ‘ the sum anticipated to be collected by the City under the Local Law amounts to only about $25,000,000.” Though this amount is demeaned as ‘1 insignificant in view of the undue hardship to the self-employed professionals,” it never-the less supports the intent of the State Legislature (L. 1971, ch. 412) to permit cities of over one million population “to raise tax revenue.” Such clearly expressed intent obliterates any question of lack of due process. As was stated in Magnano Co. v. Hamilton (292 U. S. 40, 44, 45): The due process of law clause ‘ ‘ is applicable to a taxing statute * * * only if the act be so arbitrary as to compel the conclusion that it does not involve an exertion of taxing power, but constitutes, in substance and effect, the direct exertion of a different and forbidden power, as, for example, the confiscation of property * * * Nor may [the] tax within the lawful power of a state be judicially stricken down under the due process clause simply because its enforcement may or will result in restricting or even destroying particular occupations or businesses * * ' * The point may be conceded that the tax is so excessive that it may or will result in destroying the intrastate business of appellant ’ ’.
This court cannot accept nor may it be seriously argued that the tax required to be paid ‘ ‘ will result in restricting or even destroying ’ ’ the practice of the professions by self-employed members thereof. If lawyers consider such a tax a hardship and the expected revenue of $25,000,000 “ too insignificant in view of the undue hardship, ’ ’ what may the court do if a similar complaint be made by the small tradesmen, the repairmen, handymen, those in the numerous service fields who oftentimes have their offices in their homes, do little or no advertising, and have their entire capital investment in the tools of their trade ? Do they not also pay an income tax in addition? In these times when our Federal, State and city governments are indulging in budget cutting and reduction of necessary services and facilities against the outcry of our enlightened citizenry, may the court rightfully consider the repealing of class exemptions from tax *1028 as a denial of equal protection of the laws and a deprivation of due process ? I think not.
The court has scrutinized all the authorities submitted by plaintiff and amicus curiae and finds that their rátionale support this court’s conclusion.
On a motion, as here presented, for a preliminary injunction ‘ ‘ it must appear that plaintiff has stated an actionable cause and even in the absence of a formal cross-motion a defective complaint may be stricken * * * The sufficiency of the complaint must, therefore, be first considered” (Leonard v. John Hancock Mut. Life Ins. Co., 118 N. Y. S. 2d 170, 171, affd. 281 App. Div. 859; Paliotto v. Town of Islip, 31 Misc 2d 447; Fisher v. Health Ins. Plan of Greater N. Y. [67 Misc 2d 674]). In determining the sufficiency of plaintiff’s complaint, the court has examined “ all manner of extrinsic proof ” (Millard v. Binkley Co., 28 A D 2d 620) submitted by plaintiff and amicus curiae and finds that the complaint fails to state a cause of action.
Accordingly, plaintiff’s complaint is dismissed.