OPINION OF THE COURT
Doris Ling-Cohan, J.
“[I]n this world, nothing can be said to be certain, except death and taxes.”[1] While true, it is also a certainty that those affected by a tax will be dissatisfied.
Plaintiffs New York State Association of Tobacco and Candy Distributors, Inc., a trade association of tobacco and candy distributors, and several individual tobacco distributors who serve as cigarette tax stamping agents licensed by the New York State Department of Taxation and Finance (NYS Tax Department) bring this action for declaratory and injunctive relief. This action challenges the constitutionality of Local Law No. 10 (2002) of the City of New York (amending Administrative Code of City of NY § 11-1302 [a] [3]), which, inter alia, increased the New York City excise tax on a pack of 20 cigarettes from 80 to $1.50. Motion sequence numbers 001, 004 and 005 are consolidated for disposition.
Procedural History
Plaintiffs commenced this action in November 2002, seeking: (1) a declaration that Local Law No. 10 is unconstitutional, as it violates the Due Process Clause of the 14th Amendment to the United States Constitution and article I, § 6 of the New York State Constitution, and (2) a permanent injunction prohibiting defendants from enforcing Local Law No. 10.
The gravamen of the complaint is that Local Law No. 10, which was enacted under the pretext that it would increase revenue for New York City and New York State and substantially reduce cigarette smoking in the City, was, in fact, designed to eliminate smoking by destroying the City’s tobacco industry.
On or about January 16, 2003, plaintiffs moved, by order to show cause: (1) for a preliminary injunction, enjoining defendants from enforcing Local Law No. 10, and compelling *878 defendants to segregate and escrow funds already paid by plaintiffs in connection with that law, pending the resolution of this action, and (2) for a temporary restraining order (motion sequence No. 001).
On or about January 16, 2003, defendants City of New York, Michael Bloomberg, as Mayor of the City of New York, the New York City Tax Commission, Glen Newman, as president of the New York City Tax Commission, and William C. Thompson, Jr., as Comptroller of the City of New York (collectively, the city defendants), moved, pursuant to CPLR 3211 (a) (7), to dismiss the complaint, for failure to state a cause of action (motion sequence No. 004). Similarly, Alan Hevesi, as Comptroller of the State of New York[2] (the state defendant), moved to dismiss the complaint (motion sequence No. 005).[3]
Subsequently, plaintiffs cross-moved, pursuant to CPLR 1003 and 3025 (b), to amend the complaint to join Arthur J. Roth, as Commissioner of the New York State Department of Taxation and Finance (NYS Tax Commissioner), as a defendant.
Background
Cigarettes sold in this state are subject to a state excise tax (see Tax Law § 470 [1]; § 471 [1]). Cigarette distributors licensed as cigarette tax stamping agents by the NYS Tax Department purchase tax stamps after paying the appropriate excise tax, affix tax stamps to packs of cigarettes and collect the tax from the ultimate retail purchaser of the cigarettes (see Tax Law § 471 [2]; 20 NYCRR 74.2-74.4). If a municipality, like the City of New York, is authorized to impose a cigarette excise tax, cigarettes sold within that municipality must bear a joint stamp, indicating payment of both the state and local excise taxes (see 20 NYCRR 74.2 [a]).
*879 Chapter 235 of the Laws of 1952, applicable to New York City, authorized any city within the state with a population of one million or more to adopt and amend local laws imposing, inter alia, an excise tax on cigarettes. Pursuant to that authorization, the City enacted Local Law No. 60 (1952) of the City of New York imposing a cigarette excise tax. Similar state enabling legislation and corresponding local legislation have been enacted from time to time authorizing an increase in the City’s cigarette excise tax (see e.g. L 1975, ch 877; Administrative Code of City of NY former § D46-2.0 [a] [3]).
Until July 2002, the City excise tax on a pack of 20 cigarettes was 80. On June 25, 2002, the Governor signed into law NY Senate-Assembly Bill S 7783, A 11817, which amended chapter 235 of the Laws of 1952, to authorize an increase in the City cigarette excise tax rate to $1.50 per pack of 20 cigarettes[4] (L 2002, ch 93, part E, § 1). In addition to increasing the amount of the excise tax which the City was authorized to impose on cigarettes, the state legislation required the City to share a portion of its tax revenues with the state, in order to avoid state revenue losses that would accompany the City’s cigarette tax increase. Specifically, the City is required to pay the State Comptroller 46.5% of the revenues from its cigarette tax for the period from July 2, 2002 to March 31, 2003, and 46% of such revenues thereafter. The State Comptroller must deposit the state’s share of the revenues from the City’s increased cigarette tax to the credit of the tobacco control and insurance initiatives pool, established by Public Health Law § 2807-v for disposition by the New York State Commissioner of Health (L 2002, ch 93, part E, § 4).
Acting pursuant to this state authority, on June 30, 2002, Mayor Bloomberg signed Local Law No. 10, which amended section 11-1302 (a) (3) of the Administrative Code of the City of New York to, inter alia, increase the City’s cigarette excise tax to $1.50 per pack of 20 cigarettes, effective July 2, 2002. This legislation also prescribed the sharing of revenues from the increased cigarette tax with the state, as provided by the state enabling legislation.
Local Law No. 10 further provided that a floor tax, representing the increased tax due on the inventory of all cigarettes on hand in the City, at the close of business on July 1, 2002, would *880 be payable in two installments, due on September 20, 2002 and January 20, 2003.
The stated purposes of the increase in the City’s cigarette excise tax were to: (1) generate revenue in order to “provide much needed assistance in closing the City’s $4.8 billion budget gap,” and (2) to “deter both smokers and potential smokers, especially the young, from beginning and continuing the habit.” (Mem in Support of Local Law No. 10, at 2 [affirmation of Robert J. Firestone, Esq. on behalf of city defendants in opposition to plaintiffs’ application for a preliminary injunction, exhibit 1].) It was anticipated that the passage of Local Law No. 10 would generate approximately $111 million in additional revenue for the City for fiscal year 2003 (id.).
Discussion
1. Motions by City and State Defendants to Dismiss the Complaint
On a motion to dismiss a complaint for failure to state a cause of action, the complaint must be liberally construed in the light most favorable to the plaintiff (see CPLR 3026; Leon v Martinez, 84 NY2d 83, 87 [1994]). The court must accept the facts alleged in the complaint, and reasonable inferences therefrom, as true, and determine whether the facts as alleged fit within any cognizable legal theory (id. at 87-88). Furthermore, the court may consider affidavits submitted by the plaintiff to remedy any defects in the complaint (id. at 88). For the reasons discussed below, this court concludes that the complaint in this action should be dismissed, as the allegations contained therein do not state a cause of action.
Plaintiffs contend that the cigarette excise tax increase violates the substantive due process protection in the 14th Amendment to the United States Constitution and in article I, § 6 of the NY Constitution, as it serves no legitimate governmental purpose and has no rational basis. They further assert that this substantial tax increase is, in effect, an onerous punitive measure, designed to further the improper objective of depriving tobacco distributors of their constitutional right to conduct their business enterprises, thereby constituting an unlawful taking of their businesses. According to plaintiffs, the cigarette excise tax increase will not achieve its stated objectives of raising revenues for the City and State and discouraging smoking within the City, as city residents will purchase cigarettes from other sources, including licensed tobacco distributors outside of *881 the city limits, Native American Indian Reservations, out-of-state dealers and the black market.
States and municipalities have considerable latitude in imposing taxes for the purpose of raising general revenues (see Commonwealth Edison Co. v Montana, 453 US 609, 622 [1981]; Wisconsin v J.C. Penney Co., 311 US 435, 444 [1940]). Further, states and municipalities may impose “mixed-motive taxes,” like the cigarette excise tax increase at issue, with the objectives of both raising revenues and deterring a lawful, but disfavored activity, in this case smoking (see Department of Revenue of Mont. v Kurth Ranch, 511 US 767, 782 [1994]). Nor does a mere high rate of taxation and a stated deterrent purpose render a tax a penalty where the tax is not imposed on a criminal activity (see id. at 780-782). The United States Supreme Court has stated, “[collateral purposes or motives of a legislature in levying a tax of a kind within the reach of its lawful power are matters beyond the scope of judicial inquiry” (Magnano Co. v Hamilton, 292 US 40, 44 [1934]).
At oral argument, plaintiffs asserted that discovery is necessary to substantiate their claims and to ascertain whether the Mayor had an alleged “ulterior motive,” the complete elimination of smoking, in urging passage of this tax increase. The discovery plaintiffs seek would include deposing the Mayor as to this alleged motive. Plaintiffs, however, have cited no cases providing for discovery directed at a public official in order to ascertain alleged “ulterior” motives. Providing such discovery would establish a dangerous precedent in favor of allowing any dissatisfied taxpayer to depose the Mayor each time a tax is passed to search for alleged “ulterior” motives. Moreover, “ ‘vague and conclusory allegations and expression of hope that discovery, if and when conducted, might provide some factual support for [its cause of] action . . . provide an insufficient basis for failing to dismiss a patently defective cause of action’ ” (HT Capital Advisors v Optical Resources Group, 276 AD2d 420 [1st Dept 2000] [citations omitted]).
Plaintiffs have failed to allege any facts to establish that Local Law No. 10 is not designed to further its stated legitimate purposes of raising revenues to close the City’s budget gap and deterring smoking by city residents, particularly children. In fact, plaintiffs concede that raising revenue was a stated objective of Local Law No. 10. The memorandum in support states, “[T]his proposed increase in the cigarette tax is one of a number of proposals that New York City has put forward that will *882 provide much needed assistance in closing the City’s $4.8 billion budget gap. The passage of this law will generate approximately $111 million in additional revenue for the city [sic] of New York for fiscal year 2003 and $116 million for fiscal year 2004.” (Mem in Support of Local Law No. 10, at 2.) Accordingly, there is no question that the cigarette excise tax increase enacted by Local Law No. 10 has legitimate governmental objectives and a rational basis.
Nor is there merit to plaintiffs’ contention that the tax increase contravenes the Due Process Clause because it is unreasonably high and, thus, threatens the continued viability of their cigarette distribution businesses within the City. The United States Supreme Court has repeatedly rejected similar arguments. In City of Pittsburgh v Alco Parking Corp. (417 US 369, 373 [1974]), the Supreme Court stated:
“The claim that a particular tax is so unreasonably high and unduly burdensome as to deny due process is both familiar and recurring, but the Court has consistently refused either to undertake the task of passing on the ‘reasonableness’ of a tax that otherwise is within the power of Congress or of state legislative authorities, or to hold that a tax is unconstitutional because it renders a business unprofitable.” (See also Magnano Co. v Hamilton, 292 US at 44-47; Alaska Fish Salting & By-Prods. Co. v Smith, 255 US 44, 48-49 [1921].)
The New York Court of Appeals has followed this longstanding body of precedent under the Federal Due Process Clause in upholding allegedly “excessive” state and local taxes under the Due Process Clause of the New York State Constitution. As stated by the Court of Appeals:
“The Federal and State Constitutions do not prohibit dual tax rates or require that all taxpayers be treated the same. They require only that those similarly situated be treated uniformly . . . ‘[Subject to constitutional inhibitions, the Legislature has very nearly unconstrained authority in the design of taxing impositions’ . . . Indeed, the Supreme Court has held that even a State tax which has the effect of destroying a business must be sustained if it is not invidious. The remedy for an oppressive tax is political, not judicial. . . .” (Foss v City of Rochester, 65 NY2d 247, 256-257 [1985] [citations omitted].)
*883 Similarly, in New York R.T. Corp. v City of New York (275 NY 258, 270 [1937]), the Court of Appeals observed: “[H]ardship arising from the burden of taxation or excessiveness does not render invalid an otherwise valid tax” (citations omitted). The Court of Appeals concluded that the remedy for a tax alleged to be excessive “lies not with the judiciary but with the Legislature.” (Id. at 266.)
There has been a long history of a cigarette excise tax in this city and state. In fact, New York State has imposed a cigarette tax since 1939 (see L 1939, ch 940). The City’s cigarette excise tax has been in existence since 1952 (see L 1952, ch 235; Local Law No. 60 [1952] of City of NY). Certainly, deterrence of smoking has long been recognized as a legitimate motive for a cigarette tax (see Department of Revenue of Mont. v Kurth Ranch, 511 US at 782). Just as these previous cigarette excise taxes were legitimate legislative judgments, the challenged cigarette excise tax at issue is no different. It is not this court’s role to supplant its judgment as to the relative merits of this cigarette excise tax in place of the Legislature as the remedy for an allegedly “oppressive tax” lies with that branch of government, not the judiciary.
Accordingly, the court finds that the cigarette excise tax increase enacted by Local Law No. 10 does not violate the Federal or State Due Process Clauses and therefore the complaint must be dismissed.
2. Plaintiffs’ Motion for a Preliminary Injunction
In order to obtain a preliminary injunction, a party must satisfy all of the requirements for such temporary relief: (1) likelihood of success on the merits, (2) irreparable injury absent granting the preliminary injunction, and (3) a balancing of the equities in its favor (see Grant Co. v Srogi, 52 NY2d 496, 517 [1981]; Borenstein v Rochel Props., 176 AD2d 171, 172 [1st Dept 1991]). In view of plaintiffs’ inability to demonstrate a likelihood of success on the merits of their claims, their request for a preliminary injunction must be denied.
3. Plaintiffs’ Cross Motion to Amend the Complaint
Similarly, plaintiffs’ cross motion to amend the complaint to join as a defendant the NYS Tax Commissioner is denied. Although leave to amend a pleading should be freely given (CPLR 3025 [b]; Edenwald Contr. Co. v City of New York, 60 NY2d 957, 959 [1983]), leave to amend must be denied where, as here, the proposed amendment does not remedy the lack of merit of the allegations in the original complaint (see Megaris Furs v Gimbel Bros., 172 AD2d 209 [1st Dept 1991]).
*884 Accordingly, it is ordered that the motions by the city defendants and the state defendant to dismiss are granted and the complaint is dismissed, with costs and disbursements to said defendants as taxed by the clerk of the court; and it is further ordered that the plaintiffs’ motion for a preliminary injunction is denied; and it is further ordered that plaintiffs’ cross motion for leave to amend the complaint is denied.

. Letter from Benjamin Franklin to Jean Baptiste Le Roy, Nov. 13, 1789, Writings of Benjamin Franklin 69 (Albert H. Smyth ed 1907).

. The action was commenced against H. Carl McCall solely in his official capacity as Comptroller of the State of New York, and, as such, continues against Alan Hevesi, who succeeded McCall on January 2, 2003 (see CPLR 1023).

. On January 17, 2003, this court denied plaintiffs’ application for a temporary restraining order. By orders dated February 14, 2003, this court granted, on default, the motions by the city and state defendants to dismiss the complaint. By order dated February 21, 2003, this court denied, as moot, plaintiffs’ motion for a preliminary injunction. However, by stipulation “so ordered” on March 11, 2003, this court vacated its prior order granting the city defendants’ motion to dismiss, and restored said motion to the calendar. The state defendant’s motion to dismiss was also restored to the calendar. By stipulation “so ordered” on April 28, 2003, this court vacated its prior order denying plaintiffs’ motion for a preliminary injunction, and restored said motion to the calendar.

. This authorized increase in the City’s cigarette excise tax was equivalent to the state cigarette excise tax of $1.50 per pack of 20 cigarettes, effective April 2, 2002.