DENNIS, Circuit Judge,
concurring in part and dissenting in part:
I concur in the majority’s decision that Crittendon’s sentence need not be reformed to remove the requirement that he undergo mental health treatment. However, because Crittendon’s conviction for delivery of a “simulated controlled substance” offense under Texas law is not a “controlled substance offense” as defined in U.S.S.G. § 4B1.2(b), I respectfully dissent from the majority’s affirmance of the district court’s enhancement of his sentence under U.S.S.G. § 4B1.1.
Under section 4B1.1 of the Sentencing Guidelines, a person convicted of a “controlled substance offense” who has at least two prior convictions for controlled substance offenses is a “career offender” and must be sentenced accordingly. U.S.S.G. § 4B1.1 (2001). Section 4B1.2(b) of the Guidelines defines the term “controlled substance offense” for career offender status as:
*711 an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute or dispense.
Id. § 4B1.2(b)(emphasis added). The federal Controlled Substance Act in section 802(7) defines “counterfeit substance” as:
[A] controlled substance which, or the container or labeling of which, without authorization, bears the trademark, trade name, or other identifying mark, imprint, number, or device, or any likeness thereof, of a manufacturer, distributor, or dispenser other than the person or persons who in fact manufactured, distributed, or dispensed such substance and which thereby falsely purports or is represented to be the product of, or to have been distributed by, such other manufacturer, distributor, or dispenser.
21 U.S.C. § 802(7)(emphasis added). In short, a counterfeit substance is a controlled substance that has been incorrectly labeled so as to misrepresent its manufacturer, distributor, or dispenser. As the majority concedes, this definition of the term “counterfeit substance” excludes Crittendon’s Texas state law conviction for delivery of a “simulated controlled substance.”
The majority, however, ignores this definition and instead uses a dictionary definition of the term “counterfeit” to find that Crittendon’s simulated substance conviction is a “controlled substance offense” under section 4B1.2(b). It claims that the section 802(7) definition is inapplicable because it would result in sentencing disparities among defendants with similar records.
However, because the section 802(7) definition of the term “counterfeit substance” has been effectively incorporated into the Guidelines, we are bound by this definition. Further, even if it were not expressly incorporated, we are still required to use this definition because the term “counterfeit substance” is a well-established term of art within the realm of controlled substance offenses. Finally, the majority’s concern about treating similar offenses differently is unwarranted in these circumstances; “simulated controlled substance” offenses are different from controlled and counterfeit substance offenses because, unlike those offenses, “simulated controlled substance” offenses do not involve controlled substances and are not illegal unr der federal law.
Although we generally apply the plain meaning of a term when interpreting a statute, “[wjords may have different meanings when used in the context of a special subject, than they have in general usage.” 2A NORMAN J. Singer, Sutherland Statutory ConstructioN § 47.27, at 335 (6th ed. 2000). This is particularly so when the term is defined within a statutory scheme. See Stenberg v. Carhart, 530 U.S. 914, 942, 120 S.Ct. 2597, 147 L.Ed.2d 743 (2000)(“When a statute includes an explicit definition, we must follow that definition, even if it varies from that term’s ordinary meaning.”). Further, when context dictates that a term has a particular definition, that definition will apply instead of the plain meaning of the term. See A. Magnano Co. v. Hamilton, 292 U.S. 40, 46-47, 54 S.Ct. 599, 78 L.Ed. 1109 (1934)(providing that the words of an Act “are to be given their ordinary meaning unless the context shows that they are differently used”).
The, section 802(7) definition of “counterfeit substance” refers only to controlled substances that misidentify the manufac *712 turer, distributor, or dispenser of the controlled substance. There is no dispute that this definition does not criminalize a person’s possession of a noneontrolled substance that he represents to be a controlled substance. As the majority explains, this definition has been incorporated into the Sentencing Guidelines. The Background Commentary to section 4B1.1 references 28 U.S.C. § 994(h), which provides for sentencing enhancements for persons convicted of counterfeit substance offenses under 21 U.S.C. § 841(a)(2). Section 841(a)(2) criminalizes counterfeit substance offenses based on section 802(7)’s definition of the term “counterfeit substance.” By referencing section 994(h), the Commission effectively included the section 802(7) definition of the term “counterfeit substance” within its Guidelines. Because the term has a specific definition, we must use that definition rather than the plain meaning of the term “counterfeit” in defining “counterfeit substance.” See Stenberg, 530 U.S. at 942, 120 S.Ct. 2597.
Moreover, even if the section 802(7) definition of the term “counterfeit substance” was not directly incorporated into the Guidelines, we would still be compelled to apply this definition because it is well-established within the realm of controlled substance offenses. The definition of “counterfeit substance” utilized by federal law is also pervasive throughout state law. The Uniform Controlled Substances Act (“UCSA”) describes the ban on counterfeit substances as follows:
A person may not knowingly or intentionally manufacture or deliver, or possess with intent to manufacture or deliver, a controlled substance that, or the container or labeling of which, without authorization, bears the trademark, trade name or other identifying mark, imprint, number, or device or a likeness thereof, of a manufacture, distributor, or dispenser, other than the person who manufactured, distributed, or dispensed the substance.
UnifoRM Controlled Substanoes Act § 404(a) (1994). Again, this definition identifies a counterfeit substance as a controlled substance that has been mislabeled so as to misrepresent its manufacturer, distributor, or dispenser. Because the USCA has been substantially adopted in all fifty states and the District of Columbia, it is not surprising that states similarly define the term “counterfeit substance.” For instance, Texas, where Crittendon was convicted of his “simulated controlled substance” offense, defines “counterfeit substance” as:
[A] controlled substance that, without authorization, bears or is in a container or has a label the bears an actual trademark, trade name, or other identifying mark, imprint, number, or device of a manufacturer, distributor, or dispenser other than the person who in fact manufactured, distributed, or dispensed the substance.
Tex. Health & Safety Code § 481.002(7). Many other states also employ a similar definition of the term “counterfeit substance.” See e.g., La. R.S. § 40:961(9) (defining “counterfeit substance”); Miss.Code ANN. § 41-29-105(g)(same).
Further, although it is not illegal under federal law to possess or deliver a simulated controlled substance, the UCSA and many states, including Texas, provide a separate offense for the possession or delivery of a simulated or imitation controlled substance. Uniform Controlled Substanoes Act § 405(1994); Tex. Health & Safety Code § 482.002; see e.g., La. R.S. § 40:971.1(A); Miss.Code Ann. § 41-29-146. Under Texas law, a “simulated controlled substance” is defined as “a substance that is purported to be a controlled substance, but is chemically different from the controlled substance it is purported to *713 be.” Tex. Health & Safety Code § 482.001(4); see also La. R.S. § 40:961(20) (defining “imitation controlled dangerous substance”). Thus, a simulated controlled substance is not a controlled substance, it is simply a substance that is wrongly represented to be a controlled substance. As the Texas statutes illustrate, the term “counterfeit substance” has a defined, well-established meaning distinct from the definition of a “simulated” or “imitation” controlled substance offense. Accordingly, we must apply this definition, rather than a definition based on the plain meaning of the term “counterfeit.” See Magnano, 292 U.S. at 46-47, 54 S.Ct. 599.
Finally, the majority incorrectly concludes that it must alter the section 802(7) definition of “counterfeit substance” in order to ensure that similar crimes are treated similarly. Even if we were at liberty to depart from this definition, it is not warranted here because simulated controlled substance offenses are different from controlled or counterfeit substance offenses and thus need not be treated similarly.
The Guideline Commission promulgated section 4B1.1 to fulfill Congress’s mandate, as established through 28 U.S.C. § 994(h), to enhance sentences for offenders who have repeatedly been convicted of crimes of violence and federal drug offenses. In drafting section 4B1.1, the Guideline Commission acknowledged that it amended the language in section 994(h) to “avoid ‘unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct.’ ” U.S.S.G. § 4B1.1, cmt. background. Based on this, the majority concludes that the Sentencing Commission intended to include offenses that would not fall within the express language of section 994(h), noting that the Guidelines include state law offenses, whereas section 994(h) does not.[1]
Notwithstanding its effect on state law offenses duplicative of federal offenses, this Background Commentary does not justify departing from the established definition of “counterfeit substance.” Simulated controlled substance offenses are not similar to other controlled substance or counterfeit substance offenses for one critical reason: simulated controlled substance offenses do not involve controlled substances. Further, a simulated controlled substance offense is different from those types of crimes listed in section 994(h) because it is not a federal crime to possess or sell a simulated controlled substance. Thus, the rationale for including parallel state crimes is inapplicable, and the Guideline Commission has provided us with no indication that it intended to include state convictions for acts not mentioned within section 994(h). There is no reason to believe that the Commission intended to depart from the well-established statutory definition of “counterfeit substance” so as to include simulated controlled substance offenses even though simulated controlled substance offenses are not cognizable under federal law and do not involve controlled substances.
The Sentencing Guidelines require us to use the section 802(7) definition of “counterfeit substance” in defining that term for purposes of career offender status. Because this definition does not include Crittendon’s conviction for delivery of simulated controlled substance, it is not a controlled substance offense as defined in *714 section 4B1.2(b). Therefore, Crittendon does not have the two convictions necessary to be adjudged a career offender. Consequently, I would vacate the district court’s sentence enhancement under section 4B1.1 and remand for resentencing.

. The majority is correct that including state offenses along with federal offenses does promote the Commission's concern with treating similar crimes similarly. Without adding state offenses, a person convicted of two federal drug possession crimes would receive a career offender enhancement, whereas a person with two state drug possession charges would not.