SAMUEL OKIN, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Okin v. Commissioner
Docket No. 24746-83.
United States Tax Court
T.C. Memo 1985-199; 1985 Tax Ct. Memo LEXIS 434; 49 T.C.M. (CCH) 1315; T.C.M. (RIA) 85199; April 24, 1985. *434 Held: Income averaging cannot be used in computing alternative minimum tax under section 55, IRC, as in effect during 1980. Samuel Okin, pro se. Jeffrey Millward, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined a deficiency of $18,225.70 in petitioner's 1980 Federal income tax. The sole issue for decision is whether petitioner may use a figure derived from the computation of his section 1 tax under the income averaging provisions in order to determine his liability for the alternative minimum tax imposed by section 55. [1] Our findings of fact and opinion are combined for easier discussion. Some of the facts have been stipulated by the parties and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner Samuel Okin resided in Las Vegas, Nevada at the time he filed his petition in this case. Petitioner filed a Federal income tax *435 return for the taxable year 1980 on which he elected the filing status of married filing separate return. Petitioner's 1980 return reported a liability for the income tax imposed by section 1 (hereinafter referred to as the "section 1 tax") of $31,842. The correct section 1 tax liability as stipulated is $33,493, the amount determined by respondent in the notice of deficiency. Petitioner's 1980 return reported no liability for the alternative minimum tax under section 55. Petitioner had a net capital gain from the sale of stock in 1980 in the amount of $226,718. Petitioner's net capital gain deduction allowed by section 1202(a) and claimed on his return was $136,030.80. The $136,030.80 net capital gain deduction is a tax preference item under section 57(a)(9)(A) for the purpose of determining petitioner's alternative minimum tax liability. Petitioner elected to compute his section 1 tax using the income averaging provisions of sections 1301-1305. For the purpose of the income averaging computation, petitioner's taxable income was $97,432, [2] his averageable income was $90,408.40, and his total base period income was $23,412. Petitioner's correct section 1 tax, using the *436 income averaging provisions, is computed as follows: [3]
Taxable income
$97,432.00 Total base period income
$23,412   30% of total base period income
(7,023.60)
Averageable income
90,408.40 30% of base period income (item A)
$ 7,023.60
20% of averageable income
18,081.68
Total (item B)
25,105.28
Plus Excess community income
0     Total (item C)
[4] 25,105.28
Tax on item C
7,440.58 Tax on item B
7,440.58
Less: tax on item A
927.45
Difference
6,513.13
Difference multiplied by four
26,052.52 Tax using income averaging method
$33,493.10 Petitioner's section 1 tax computed without using the income *437 averaging provisions would be $51,770. Respondent determined that in addition to the section 1 tax of $33,493, petitioner is liable for the alternative minimum tax in an amount of $17,947.60. Respondent computed petitioner's alternative minimum tax as follows: Corrected tax table income
$99,432   Less: Zero bracket amount
$1,700   Allowable exemptions (2)
2,000   Difference
(3,700)  95,732   Plus: Adjusted itemized deductions
0   Capital gains deduction
136,030.80
136,030.80
Alternative minimum taxable income
231,762.80
Amount taxable at 10%     20,000.00
Tax
2,000.00
Amount taxable at 20%     20,000.00
Tax
4,000.00
Amount taxable at 25%    181,762.80
Tax
45,440.70
Total tentative alternative minimum tax
51,440.70
Less: Regular income tax less tax credits
33,493.10
Alternative minimum tax
[5] $17,947.60
Section 55 imposes an alternative minimum tax on noncorporate taxpayers to the extent *438 that it exceeds the taxpayer's "regular tax" computed without regard to section 55. [6] The alternative minimum tax was added by the Revenue Act of 1978 [7] in conjunction with the decision to exempt the capital gain deduction under section 1202 from the add-on minimum tax under section 56. The congressional intent behind these changes was to remove the disincentives to capital formation associated with the add-on minimum tax on capital gains preferences, yet ensure that individuals having high incomes but paying low regular taxes would still be subject to a reasonable amount of tax on their capital gains. See Joint Committee on Taxation, 95th Cong., 2d Sess., General Explanation of the Revenue Act of 1978, at 261-262 (1979), quoted in 4 B. Bittker, Federal Taxation of Income, Estates and Gifts P111.3.12 (1981). *439 The alternative minimum tax is imposed on "alternative minimum taxable income" according to a rate schedule which (as effective in 1980) exempts the first $20,000 of alternative minimum taxable income, applies a 10 percent rate on amounts greater than 20,000 but less than $60,000, applies a 20 percent rate for amounts greater than $60,000 but less than $100,000, and applies a 25 percent rate for amounts exceeding $100,000. The tentative tax so computed in then compared to the regular tax (which includes the add-on minimum tax on tax preferences under section 56), and if the tentative tax is greater than the regular tax, such excess is imposed as a tax "in addition to all other taxes." Section 55(a). The tax base for the alternative minimum tax imposed by section 55(a) is "alternative minimum taxable income," which is defined in section 55(b) as gross income, reduced by allowable deductions and by amounts included in income under sections 86 (relating to alcohol fuel credits) or 667 (relating to accumulation distributions from trusts), and increased by two tax preference items--adjusted *440 itemized deductions (as defined in section 57(a)(1)) and capital gains (as defined in section 57(a)(9)). Section 57(a)(9) defines as an item of tax preference an amount equal to the net capital gain deduction determined under section 1202. In accordance with this statutory scheme, respondent determined petitioner's alternative minimum tax liability by subtracting from his gross income of $133,484 allowable deductions in the amount of $34,052 to arrive at corrected "tax table income" of $99,432. This amount was further reduced by $3,700 to account for the zero bracket amount under section 63(d) and the deduction for personal exemptions under section 151. The resulting $95,732 figure was then increased by $136,030.80, the amount of petitioner's capital gains deduction, as provided by sections 55(b)(C)(ii) and 57(a)(9) to produce alternative minimum taxable income of $231,762.80. Respondent then determined the tentative alternative minimum tax to be $51,440.70 [8] which exceeded petitioner's regular income tax of $33,493.10 by $17,947.60, resulting in an alternative minimum tax of that amount. *441 Petitioner contends that his alternative minimum tax should be computed by starting not with the $99,432 figure used by respondent, but rather with a figure of $25,105.28 which petitioner refers to as his "adjusted average annual taxable income." This $25,105.28 figure is derived from the computation of petitioner's section 1 tax under the income averaging provisions of section 1301-1305. [9] In effect, petitioner argues that because he elected to use the income averaging provisions to compute his section 1 tax, he should also get the benefit of the income averaging in computing his alternative minimum tax. He argues strenuously that respondent's "erroneous computation" of his alternative minimum tax "nullifies" the benefit he received from the income averaging provisions, contrary to the specific terms of the Internal Revenue Code and to congressional intent. [10] Despite petitioner's impassioned plea for relief from this alleged unfairness, we find no merit to the arguments presented in his lengthy briefs. *442 The statutory scheme governing the imposition and computation of the alternative minimum tax is clear and precise, and leaves, on these facts, no room for interpretation. The starting point for the computation is "gross income," which is then decreased to account for the taxpayer's allowable deductions and increased by taxpayer's items of tax preference. Section 55(b)(1). Petitioner's attempt to substitute "average annual taxable income" (a term apparently of his own creation) for "gross income" is without statutory foundation, and reflects a misunderstanding of the relationship (or lack thereof) between the alternative minimum tax and the income averaging provisions. The alternative minimum tax imposed by section 55 is entirely separate from the section 1 tax. This is clear from the language of section 55(a) which states that "there is imposed (in addition to all other taxes imposed by this title) a tax equal to the amount of such excess." The alternative minimum tax is imposed and computed independently of the section 1 tax; the only relationship between these two taxes is that only *443 the excess, if any, of the tentative alternative minimum tax over the taxpayer's "regular tax" (essentially the section 1 tax, with certain modifications as provided in section 55(b)(2)) is imposed as the alternative minimum tax. This feature distinguishes the alternative minimum tax under section 55 from the "add-on" minimum tax imposed by section 56. [11] It is clear from the statutory scheme that the method by which the section 1 tax is computed has no impact on the computation of the alternative minimum tax. Section 1301 specifically provides that the income averaging provisions apply to the "tax imposed by section 1." Thus, petitioner's use of the income averaging provisions to compute his section 1 tax is irrelevant to the computation of his alternative minimum tax. His contention that his election to use the income averaging provisions of sections 1301-1305 caused the figure $25,105.28 (derived from the income averaging computation) to be substituted for the $99,432 figure for the purposes of the alternative minimum tax computation is utterly without statutory foundation. [12]
*444 We find this issue to be controlled by our opinion in Riley v. Commissioner,66 T.C. 141 (1976), in which we rejected a similar attempt to apply the income averaging provisions to an entirely independent minimum tax on items of tax preference. Although Riley involved the add-on minimum tax under section 56, the general statutory scheme and the critical statutory language are virtually identical to that of the alternative minimum tax in issue herein. [13] We think the following language in Riley is equally apposite to the case at hand: The tax imposed by section 56 is specifically stated to be "in addition to the other taxes imposed by this chapter." Sections 56 through 58 appear to be a self-contained unit of taxation, whereas computation of the tax imposed by section 1 may involve the application of several other Code sections. The deductions, exclusions, and credits allowed in the computation of section 1 tax may not be utilized in the computation of the tax imposed by section 56 unless specifically provided. Sections 1301 through 1305 do not provide a mechanism *445 by which the minimum tax on tax preference income may be averaged. Section 1301, on its face, has reference only to the tax imposed by section 1. In our opinion, if Congress had intended to allow income averaging in the computation of section 56 tax, it undoubtedly would have said so. We are unwilling to imply such an intent on the part of Congress. To apply sections 1301 through 1305 in the manner urged by petitioners would defeat the purpose behind section 56 since their tax preference items would entirely escape the additional tax imposed by that section. We think it was clearly the intention of Congress to make sure that such items were at least subjected to some minimum tax. [66 T.C. at 144] *446 We followed our opinion in Riley in Stockwell v. Commissioner,T.C. Memo 1983-520, which was recently affirmed by the Fifth Circuit. Stockwell v. Commissioner,736 F.2d 1051 (5th Cir. 1984). In affirming the Tax Court in Stockwell the 5th Circuit noted: The Stockwells correctly note that in the Tax Reform Act of 1969, P.L. 91-172, Congress specifically amended the income averaging provision to include the averaging of capital gains. From this linchpin, they reason that the minimum tax imposed by § 56 likewise should be averagable. We cannot agree. Neither the language of the statute nor the legislative history supports that conclusion. * * * * * * Income averaging applies only to taxes imposed by § 1, it does not apply to the minimum tax imposed by § 56. [736 F.2d at 1052-1053]. We think these cases compel a decision for the respondent herein. After the trial in this case was concluded, we permitted petitioner to file an amended petition raising the additional argument that section 55, as applied by respondent in this context, is unconstitutional. Petitioner's amended petition states several purported constitutional *447 objections to the method by which respondent computed his alternative minimum tax. [14] We find no merit to these objections, which are not supported by any specific references to the Constitution or citations to precedent. The constitutionality of the minimum tax under section 56 has been upheld. Wyly v. United States,662 F.2d 397, 403-406 (5th Cir. 1981); Graff v. Commissioner,74 T.C. 743, 765-767 (1980), affd. per curiam, 673 F.2d 784 (5th Cir. 1982). As we have discussed, the purpose and statutory scheme of the minimum tax under section 56 and the alternative minimum tax under section 55 are quite similar, [15] and we think the thorough discussions in the aforementioned cases upholding the constitutionality of the minimum tax apply with equal force to the alternative minimum tax. *448 Decision will be entered under Rule 155.
[16]
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during 1980.↩
2. Petitioner had dividend income of $42,797, taxable capital gain income of $90,687, excess itemized deductions of $34,052, and was allowed two exemptions. ↩
3. Certain steps of the income averaging computation which are not relevant to this discussion have been deleted. ↩
4. The $25,105.28 figure is designated by petitioner as "adjusted average annual taxable income." Petitioner contends that this figure should be used as the starting point for computing his alternative minimum tax. (See discussion infra↩).
5. These are the figures used in the notice of deficiency. See following for comments thereon.↩
6. As effective during 1980, section 55 provides in pertinent part: Sec. 55. ALTERNATIVE MINIMUM TAX FOR TAXPAYERS OTHER THAM CORPORATIONS. (a) ALTERNATIVE MINIMUM TAX IMPOSED.--In the case of a taxpayer other than a corporation, if-- (1) an amount equal to the sum of-- (A) 10 percent of so much of the alternative minimum taxable income as exceeds $20,000 but does not exceed $60,000 plus (B) 20 percent of so much of the alternative minimum taxable income as exceeds $60,000 but does not exceed $100,000, plus (C) 25 percent of so much of the alternative minimum taxable income as exceeds $100,000, exceeds (2) the regular tax for the taxable year, then there is imposed (in addition to all other taxes imposed by this title) a tax equal to the amount of such excess. (b) DEFINITIONS.--For purposes of this section-- (1) ALTERNATIVE MINIMUM TAXABLE INCOME.--The term "alternative minimum taxable income" means gross income-- (A) reduced by the sum of the deductions allowed for the taxable year, (B) reduced by the sum of any amounts included in income under section 86 or 667, and (C) increased by an amount equal to the sum of the tax preference items for-- (i) adjusted itemized deductions (within the meaning of section 57(a)(1), and (ii) capital gains (within the meaning of section 57(a)(9)). * * * (2) REGULAR TAX.--The term "regular tax means the taxes imposed by this chapter for the taxable year (computed without regard to this section and without regard to the taxes imposed by sections 72(m)(5)(B), 402(e), 408(f), 409(c), and 667(b)) reduced by the sum of the credits allowable under subpart A of part IV of this subchapter (other than under sections 31, 39 and 43). For purposes of this paragraph, the amount of the credit allowable under such subpart shall be determined without regard to this section. (3) TREATMENT OF ZERO BRACKET AMOUNT.--In the case of an individual who does not itemize his itemized deductions, the zero bracket amount shall be treated as a deduction allowed. * * * ↩
7. Pub. L. 95-600, 92 Stat. 2763.↩
8. Although neither party has mentioned it, respondent's computation appears to us to contain both an error in addition and an erroneous application of the formula provided in the statute. First, the 3 figures used in the taxable brackets do not equal the alternative minimum taxable income figure of $231,762.80. They are $20,000, $20,000 and $181,762.80. The income in the third bracket taxed at 25% should be $191,762.80, if respondent's other figures are right, rather than $181,762.80. Secondly, and more importantly, the brackets do not conform to the formula. As mentioned above, the first $20,000 of alternative minimum taxable income is not taxed; the next $40,000 ($20,000 to $60,000) is taxed at 10%; the next $40,000 ($60,000 to $100,000) is taxed at 20%; and the remaining $131,762 ($100,000 to $231,762.80) is taxed at 25%. This produces a tentative alternative minimum tax of $44,940.70 rather than the $51,440.70 arrived at by respondent. When the regular tax is deducted therefrom the alternative minimum tax is $11,447.60 rather than the $17,947.60 arrived at by respondent. The parties should consider this in submitting proposed computations of deficiency under Rule 155.↩
9. See income averaging computation and note 4, supra.↩
10. Petitioner's method of computing his alternative minimum tax results in no liability for that tax because the tentative alternative minimum tax ($32,859) does not exceed the regular income tax ($33,493).Petitioner also correctly observes that had he not elected to use the income averaging method to compute his section 1↩ tax, he would not be liable for any alternative minimum tax, due to the fact that his regular tax of $51,770 would exceed the tentative alternative minimum tax of $51,440.70. The fuel for petitioner's vehement arguments herein appears to be this perceived unfairness of having his benefits from income averaging negated by the alternative minimum tax. The heading for Point III of petitioner's reply brief states: "Respondent's Fallacious Contentions Encompass Untold Devastating Results and Consequences Almost Beyond Comprehension." (Petitioner's Reply Brief, p. 8).
11. The add-on minimum tax no longer applies to noncorporate taxpayers. In §§ 201(a), 201(c) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 411, Congress repealed the add-on minimum tax for individuals, and broadened the alternative minimum tax under section 55. See Conference Report on Tax Equity and Fiscal Responsibility Act of 1982, H. Rept. No. 97-760 at 473-476 (1982). 1982-2 C.B. 600↩, 602-609. 12. We feel it appropriate to recognize petitioner's remarkable tenacity and creativity in pressing his arguments in the face of this inflexible statutory scheme. His argument borders on the metaphysical; according to petitioner, when he attached the schedule electing income averaging to his return, his "adjusted gross income" was transformed, for all purposes, into "adjusted average annual taxable income" (the $25,105.28 figure). This unique approach to statutory construction is not tenable given the precise definitional provisions involved.↩
13. The language of section 56(a) involved in Riley v. Commissiner,66 T.C. 141 (1976), reads as follows: "In addition to all other tax imposed by this chapter, there is hereby imposed * * *" The taxes on items of tax preference imposed by sections 55 (the alternative tax) and 56 (the add-on tax) perform an identical function -- ensuring that taxpayers having high adjusted gross incomes, but paying little regular tax because of various tax preferences, are nevertheless subject to a reasonable amount of tax. See 4 B. Bittker, Federal Taxation of Income, Estates and Gifts, PP111.3.11, 111.3.12 (1981). Both the sec. 55 tax and the sec. 56 tax are computed by reference to certain items of tax preference as defined in sec. 57. Although the computation and scope of these provisions differ, their effect -- to impose an additional tax on items of tax preference independent of the "regular tax" -- is identical. In fact, as a result of later modifications by Congress, the alternative minimum tax has been substituted for the add-on minimum tax in the case of noncorporate taxpayers. See note 11, supra.↩
14. The amended petition alleges, among other things, that section 55 "discriminates" against petitioner and other raxpayers having preferential income and the right to elect to income average, and that section 55↩ as "interpreted" by respondent constitutes a "taking [of] substantial property of the taxpayer without due process of law and without adequate compensation." 15. See note 13, supra.↩
16. While we decide the sole issue in favor of respondent and would usually enter a decision for respondent in the amount of deficiency determined in the notice of deficiency, we will leave the amount of the decision open until the parties can determine whether respondent correctly computed the amount of the alternative minimum tax in accordance with the provisions of sec. 55(1)↩. See note 8.