Samuel OKIN, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 85–7594.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 12, 1986.*

Decided Jan. 26, 1987.

Samuel Okin, Las Vegas, Nev., for petitioner-appellant.

Department of Justice, Roger M. Olsen, Washington, D.C., for respondent-appellee.

Before TANG, FERGUSON and HALL, Circuit Judges.

PER CURIAM:

Samuel Okin appeals from the Tax Court's determination of an $18,255.70 deficiency in income tax for the year 1980. Okin contends that the alternative minimum tax provision of I.R.C. § 55 (Supp.IV

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 3(f) and Fed.R.App.P. 34(a).

1980)[1] should not be computed by starting with his adjusted gross income, but rather by starting with an "adjusted average annual taxable income" derived from the income averaging provisions of I.R.C. §§ 1301–1305 (26 U.S.C. §§ 1301–1305 (1982)). Okin observes that the implementation of section 55 may defeat the advantages of sections 1301–1305. He also claims that section 55, as construed by the Commissioner, constitutes an unconstitutional taking of property without due process of law and without adequate compensation. The Tax Court rejected Okin's statutory and constitutional claims. *Okin v. Commissioner*, 49 T.C.M. (CCH) 1315 (1985). We affirm.

I

FACTS

In 1980, Okin had a long-term capital gain of $226,718. On his federal tax return for that year he computed his taxes by income averaging, utilizing schedules G and TC. *See* I.R.C. §§ 1301–1305. Okin did not report any liability for the alternative minimum tax. *See* I.R.C. § 55.

On audit, the Commissioner determined that Okin was liable for $308.10 in additional section 1 taxes[2] and $17,947.60 in alternative minimum tax. Accordingly, he issued Okin a notice of deficiency for $18,-255.70 in income taxes for the taxable year 1980.

**1.** The version of section 55 applicable to the tax year 1980 can be found in 26 U.S.C. § 55 (Supp. IV 1980). The section for tax year 1980 can also be reconstructed from the historical notes appended to the current provision in the West Publishing and Lawyer's Cooperative versions of the Code.

**2.** This addition results from the Commissioner's determination of inaccuracies on Okin's forms for I.R.C. § 1 taxes. This determination is not disputed on appeal.

**3.** Former section 56 applied an add-on minimum tax to certain tax preference items. It was imposed in addition to the regular tax at a flat rate above a specified threshold amount. *See* 26 U.S.C. § 56 (1976). In contrast, the section 55 tax, enacted in 1978, is progressive and is imposed to the extent it exceeds the regular tax.

Okin petitioned the Tax Court for a redetermination of the deficiency, asserting that the alternative minimum tax should not be computed by starting with his adjusted gross income, but rather by starting with an "adjusted average annual taxable income" derived from the income averaging provisions of I.R.C. §§ 1301–1305. He also claimed that the alternative minimum tax, as applied by the Commissioner, was an unconstitutional "taking of property without due process of law and without adequate compensation."

The Tax Court sustained the deficiency as determined by the Commissioner. The court followed its ruling in *Riley v. Commissioner*, 66 T.C. 141 (1976), which had rejected a similar interpretation of former I.R.C. § 56 (1976).[3] *Okin*, 49 T.C.M. (CCH) at 1319. The court in *Riley* had held that the add-on minimum tax on tax preference items of section 56 did not incorporate the income averaging provisions of sections 1301 through 1305. *See Riley*, 66 T.C. at 144. The court also rejected Okin's constitutional claims, relying on *Graff v. Commissioner*, 74 T.C. 743 (1980), *aff'd per curiam*, 673 F.2d 784 (5th Cir.1982), and *Wyly v. United States*, 662 F.2d 397 (5th Cir.1981). Okin timely appeals.

Two issues are presented for determination:

1. Did the Tax Court err in determining that income averaging may not be used to determine alternative minimum tax liability under I.R.C. § 55?

*See* 26 U.S.C. § 55 (Supp. IV 1980) (the section as applicable to tax year 1980). Although section 56 is referred to as the "add-on minimum tax" to distinguish it from the "alternative minimum tax" of section 55, both sections are "add-on" provisions since they increase a taxpayer's liability over what is otherwise calculated under section 1.

In 1982, Congress reordered the sections, adding a tax on all preference items to section 55, which thus became the only add-on tax applicable to taxpayers other than corporations. Section 56 was amended to cover only corporations. *See* 26 U.S.C. §§ 55, 56 (1982). *See generally* B. Bittker & L. Lokken, *Federal Taxation of Income, Estates and Gifts* ¶ 113.3.12, at S111-40 to 42 (Supp. No. 3 1986).

2. Is I.R.C. § 55 constitutional?

## II

## STANDARD OF REVIEW

■ Decisions of the Tax Court are reviewed on the same basis as decisions in civil bench trials in the United States District Courts. *Mayors v. Commissioner*, 785 F.2d 757, 759 (9th Cir.1986). This court thus reviews de novo the Tax Court's interpretation and application of statutes. *Betson v. Commissioner*, 802 F.2d 365, 367 (9th Cir.1986); *see also United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## III

## DISCUSSION

A. *Income Averaging and Alternative Minimum Tax*

1. *Plain Meaning of Section 55*

■ Okin maintains that his alternative minimum tax should be computed not by starting with $99,432, the figure representing adjusted gross income, but rather with $25,105.28, which Okin refers to as his "average annual adjusted taxable gross income." This $25,105.28 figure is derived from Okin's computation of his section 1 tax under the income averaging provisions of sections 1301–1305.

Okin's interpretation is incorrect. By the plain meaning of its text, the alternative minimum tax provision applies "in addition" to the other provisions. I.R.C. § 55. The income averaging provisions, by their terms, apply only to "the tax imposed by section 1." I.R.C. § 1301. The provisions are therefore separate. The reference to "gross income" in section 55(b)(1) is unambiguous; it does not refer to any adjusted figure. In fact, section 55 does not refer to sections 1301–1305, nor vice-versa.[4] Also,

the provisions of sections 1301–1305 could have no effect on "gross income" because the income-averaging provisions are intended to adjust the rate of taxation, not the amount of gross income. *See generally* 4 B. Bittker, *Federal Taxation of Income, Estates and Gifts* ¶ 111.3.13 (1981).

2. *Purpose of Alternative-Minimum Tax*

I.R.C. §§ 1301–1305 allow income averaging for "the tax imposed by section 1." Income averaging is designed to ease the burden of a progressive tax-rate schedule on a taxpayer with widely fluctuating or rapidly rising income. 4 B. Bittker, *supra*, ¶ 111.3.13, at 111–70. The provisions do not alter the taxpayer's income for the given year. Rather, they reduce the rate at which that income is taxed. Thus, in a case such as Okin's, where a large capital gain is realized in one year, the provisions lower the tax rate in a compensatory fashion to equal, ideally, the rate(s) that would have applied had the income been spread evenly over the preceding base-period years and the tax year in question. *See generally id.*

Unlike the income-averaging provisions, the alternative minimum tax provided by I.R.C. § 55 is not a section 1 tax. Rather it is imposed "in addition to all other taxes imposed by this title...." I.R.C. § 55(a). This tax was fashioned to tax certain income which was not otherwise being taxed. Specifically, it was directed at taxpayers with, among other things, large amounts of net capital gain and either low amounts of ordinary income or offsetting losses. By enacting this tax, Congress intended for every individual to pay at least a reasonable minimum amount of tax with respect to large capital gains while nevertheless encouraging capital formation.

The alternative minimum tax is imposed to the extent it exceeds the regular tax. I.R.C. § 55(a). It is computed by first de-

---

4. The forms themselves support this analysis. For 1980, form 6251 was used for computation of alternative minimum tax. On line 1, the adjusted gross income corresponds with Form

1040, line 32, which is the adjusted gross income prior to calculation of income-averaged income.

termining the "alternative minimum taxable income." This term, as defined in section 55(b)(1), consists of taxable income, plus certain amounts that were allowable as deductions in other sections, including the net capital gain deduction. (This figure is enlarged in Okin's case by the inclusion of his capital gains.) An amount ranging from 10 to 25 percent of this figure (the tentative alternative minimum tax) is then compared to the "regular" income tax liability (the tax imposed by section 1, with adjustments, in Okin's case, the tax using the income-averaging method). If the tentative alternative minimum tax exceeds the regular tax, "then there is imposed (in addition to all other taxes imposed by this title) a tax equal to the amount of such excess." I.R.C. § 55(a).

■ The gravamen of Okin's complaint is that the Commissioner's computations under I.R.C. § 55 virtually nullify his tax savings under the income-averaging provisions. In this case section 55 does have that effect.[5] But this result is not contrary to congressional intent. Although section 55 increases Okin's total tax, his capital gain deductions overall decreased his total liability under sections 1 and 55 to almost one-third of what it would otherwise have been. Thus, both congressional concerns in enacting section 55—tax on gains and incentive for capital formation—are served. *See* 4 B. Bittker, *supra* p. 5, ¶ 111.3.12, at 111-67 to 68.

### 3. *Analogy to Section 56*

■ We also agree with the Tax Court that, in addition to the plain meaning and purpose of section 55, analogy to the former minimum tax upon preference items supports the conclusion that income aver-

aging does not apply to the minimum tax.[6] Other courts have reached that conclusion. *See Stockwell v. Commissioner,* 46 T.C.M. (CCH) 1196 (1983), *aff'd,* 736 F.2d 1051 (5th Cir.1984); *Riley v. Commissioner,* 66 T.C. 141 (1976). The minimum tax imposed under former section 56, like section 55 here, was an "add-on" minimum tax imposed in addition to the ordinary tax of section 1. Application of the averaging provisions is equally inappropriate to section 55 as to section 56.

These two provisions are part of the same statutory scheme. The alternative minimum tax provisions of section 55 were enacted at the same time the minimum tax provisions of section 56 were amended. *See* 4 B. Bittker, *supra* p. 5, ¶ 111.3.12, at 111-67 to 68 (quoting *Joint Committee on Taxation, General Explanation of the Revenue Act of 1978,* 95th Cong., 2d Sess. 261-62 (1979)). The Joint Committee opined that the substitution of the alternative minimum tax for the "add-on" minimum tax of section 56 in the case of capital gains would better accomplish the purpose of the "add-on" tax. *Id.*

There is no indication that Congress intended a different rule to apply to section 55 than to section 56. Accordingly, the Tax Court correctly rejected Okin's contentions regarding the operation of section 56.

### B. *Constitutionality of Section 55*

Okin argues that the alternative minimum tax of I.R.C. § 55 as applied by the Commissioner, constitutes a "taking of property without due process of law and without adequate compensation." The Tax Court allowed Okin to raise this claim after trial by an amended petition, and quickly

---

5. The Tax Court noted that Okin's section 1 tax computed without income averaging would be $51,770 instead of $33,493.10. Thus, on his section 1 taxes, Okin would save $18,276.90 by income averaging. However, his tentative alternative minimum tax, as computed by the Commissioner, is $51,440.70. Since this amount is imposed to the extent it exceeds the regular tax, Okin's total liability (regular tax and alternative minimum tax) would be $51,770 without income averaging, compared with $51,440.70 with

income averaging. Hence, the effect of the imposition of the alternative minimum tax is that by income averaging Okin saves only $329.30 instead of $18,276.90. *See Okin,* 49 T.C.M. (CCH) at 1318 n. 10.

6. *See supra* note 3 for an explanation of the relation of the preference tax (§ 56) to the minimum tax (§ 55).

dispatched it. *Okin,* 49 T.C.M. (CCH) at 1320. We do so as well.

It is commonplace that the due process clause ordinarily places no limits upon the congressional taxing power. *See A. Magnano Co. v. Hamilton,* 292 U.S. 40, 44, 54 S.Ct. 599, 601, 78 L.Ed. 1109 (1934). As the Supreme Court noted in another context,

> [t]he claim that a particular tax is so unreasonably high and unduly burdensome as to deny due process is both familiar and recurring, but the Court has consistently refused ... to undertake the task of passing on the "reasonableness" of a tax that otherwise is within the power of Congress....

*City of Pittsburgh v. Alco Parking Corp.,* 417 U.S. 369, 373, 94 S.Ct. 2291, 2294, 41 L.Ed.2d 132 (1974). Okin's claim of a taking in violation of due process is thus groundless.

 Apparently hoping to fit his claim into the category of "rare and special circumstances" where due process limits the taxing power, *see A. Magnano Co.,* 292 U.S. at 44, 54 S.Ct. at 601, Okin alleges that the Commissioner's and the Tax Court's interpretations of section 55 are "discriminatory." By discriminatory, Okin apparently means that in his case section 55 negates the effect of the averaging provisions. But that which Congress grants through the averaging provisions it may take away through the minimum tax. A classification of taxation is permissible if it has a reasonable relation to a legitimate governmental end. *Welch v. Henry,* 305 U.S. 134, 144, 59 S.Ct. 121, 124, 83 L.Ed. 87 (1938). In enacting the minimum tax, Congress attempted to remedy general taxpayer distrust of the system growing from large numbers of taxpayers with large incomes who were yet paying no taxes. *See* 4 B. Bittker, *supra* p. 5, ¶ 111.3.11, at 111–60 to 61 (discussing the enactment of section 56); *see also id.* ¶ 111.3.12, at 111–67 to 68 (section 55 enacted to better serve the purposes that originally motivated the pas-

sage of section 56). Here, where the benefits of averaging were in part taken away by the minimum tax, we do not pretend to interfere in Congress's ordering of the tax system.[7]

We thus join a number of other courts in upholding the constitutionality of sections 55 and the related section 56. *See Wallach v. United States,* 800 F.2d 1121, 1123–24 (Fed.Cir.1986) (sections 55 and 56); *Wyly v. United States,* 662 F.2d 397, 403–06 (5th Cir.1981) (section 56); *Graff v. Commissioner,* 74 T.C. 743, 765–67 (1980) (section 56), *aff'd per curiam,* 673 F.2d 784 (5th Cir.1982). The section 55 alternative minimum tax is a rational means of obtaining a broad-based tax, and therefore is constitutional.

The decision of the Tax Court is

AFFIRMED.

---

7. We note that Okin's total tax liability ($51,540) is only about 23% of his net long-term capital gain alone ($226,718). His is an odd case to raise a question of the fairness of Congress's allocation of the tax burden.