**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 7 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DAVID R. KLAASSEN and
MARGARET J. KLAASSEN,

        Petitioners - Appellants,

    v.

COMMISSIONER OF INTERNAL
REVENUE,

        Respondent - Appellee.

No. 98-9035

(U.S. Tax Court)

(T.C. No. 11210-97)

---

**ORDER AND JUDGMENT**[*]

---

Before **ANDERSON**, **KELLY**, and **BRISCOE**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

David R. and Margaret J. Klaassen appeal from the Tax Court's ruling that they are liable for an alternative minimum tax (AMT) in the amount of $1,085 for the 1994 tax year. The Klaassens contend that the tax court erred (1) by applying the AMT provisions, I.R.C. §§ 55-59 (1988 & Supp. 1994), to them in violation of congressional intent; or, alternatively (2) by applying the AMT provisions to them in violation of their First and Fifth Amendment rights. We affirm.

## BACKGROUND

The facts are undisputed. During the 1994 tax year, the Klaassens were the parents of ten dependent children. According to their 1994 joint tax return, they earned an adjusted gross income (AGI) of $83,056.42. On Schedule A, the Klaassens claimed deductions for medical expenses and for state and local taxes in the respective amounts of $4,767.13 and $3,263.56. Including their claimed deductions for interest and charitable contributions, their total Schedule A itemized deductions equaled $19,563.95. Therefore, they subtracted that amount from their AGI, and on line 35 of their Form 1040, they showed a balance of $63,492.47. On line 36, they entered a total of $29,400 for twelve personal exemptions—one each for themselves and their ten children. After subtracting that amount, they showed a taxable income of $34,092.47 on line 37 of their Form

1040, and a resulting regular tax of $5,111.00 on line 38. They did not provide any computations for AMT liability.

Following an audit, the IRS issued a notice of deficiency, advising the Klaassens that they were liable for a $1,085.43 AMT pursuant to I.R.C. §§ 55-59.[1] Specifically, the IRS concluded that, in the Klaassens' case, I.R.C. §§ 55-56 required three specific adjustments, or increases, to the taxable income which they showed on line 37 of their Form 1040.[2] According to the IRS's interpretation, subsection 56(b)(1)(A)(ii) required the entire $3,263.56 deduction for state and local taxes to be added back. Next, subsection 56(b)(1)(B) reduced the deduction allowable for medical expenses by setting a 10% floor in lieu of the 7.5% floor normally allowed under § 213(a)—resulting in a net adjustment of $2,076.41. Finally, § 56(b)(1)(E) deprived the Klaassens of the entire $29,400 deduction they claimed on line 36 of their Form 1040. After adjusting the taxable income by

[1]I.R.C. § 55 imposes an alternative minimum tax, which is the difference between the "tentative minimum tax" and the "regular tax." In order to compute the tentative minimum tax, certain adjustments (increases) are made to the taxpayer's line 37 taxable income. See I.R.C. §§ 55(b)(2); 56, 57. If this adjusted figure, termed the "alternative minimum taxable income," is less than $150,000, and a joint return is involved, the taxpayers are allowed a $45,000 exemption/deduction. See I.R.C. §§ 55(b)(A)(ii), 55(d). The tentative minimum tax is then calculated as 26% of the difference, *i.e.*, the amount by which the alternative minimum taxable income exceeds the $45,000 exemption. See I.R.C. §§ 55(b)(1)(A)(i)(I), (b)(2), (d)(1)(A)(i).

[2]Although I.R.C. § 55(b)(2) also provides for adjustments related to tax preference items described in § 57, the Klaassens had no such preferences.

-3-

these three amounts, the IRS set the alternative minimum taxable income at $68,832.44. After deducting the $45,000 exemption, the tentative minimum tax was computed on the excess: 26% x $23,832.44 = $6,196.43. The difference between that figure and the Klaassens' regular tax was $1,085.43. The Tax Court upheld the IRS's position, see Klaassen v. Commissioner, 1998 WL 352260, T.C.M. (RIA) 98,241 (1998), and the Klaassens brought this appeal.

## DISCUSSION

The Klaassens do not dispute the numbers or the mechanics used to calculate the AMT deficiency. Rather, they claim that, as a matter of law, the AMT provisions should not apply to them. We review the Tax Court's legal conclusions de novo. Preslar v. Commissioner, 167 F.3d 1323, 1326 (10th Cir. 1999).

## A.

I.R.C. § 56(b)(1)(E) plainly states that, in computing the alternative minimum taxable income, "the deduction for personal exemptions under section 151 . . . shall not be allowed." Nonetheless, the Klaassens argue that Congress intended the AMT to apply only to very wealthy persons who claim the types of tax preferences described in I.R.C. § 57. Essentially, the Klaassens contend that

Congress did not intend to disallow personal exemptions for taxpayers at their income level when no § 57 preferences are involved. Although they cite no legislative history to support their contention, the Klaassens argue that their entitlement to their personal exemptions is mandated by I.R.C. §§ 151-153. In particular, they note that for 1994, I.R.C. § 151(d) allowed taxpayers filing joint returns to claim the full exemption so long as their AGI was less than $167,700. Appellant's Br. at 6. They then argue that the § 151(d) threshold amount should be interpolated as a threshold for the AMT provisions. We disagree.

In the absence of exceptional circumstances, where a statute is clear and unambiguous our inquiry is complete. Burlington Northern R.R. Co. v. Oklahoma Tax Comm'n, 481 U.S. 454, 461 (1987); United States v. Angelo D., 88 F.3d 856, 860 (10th Cir. 1996). The AMT framework establishes a precise method for taxing income which the regular tax does not reach. In creating this framework, Congress included several provisions, "marked by a high degree of specificity," by which deductions or advantages which are allowed in computing the regular tax are specifically disallowed for purposes of computing the AMT. Huntsberry v. Commissioner, 83 T.C. 742, 747-48 (1984); cf. Okin v. Commissioner, 808 F.2d 1338, 1341 (9th Cir. 1987) (holding that income averaging does not apply to the AMT). Instead of permitting those separate "regular tax" deductions, Congress specifically substituted the $45,000 fixed exemption for purposes of

AMT computations. I.R.C. § 55(d)(1).[3]  If, as the Klaassens claim, Congress had intended the AMT to apply only to taxpayers whose incomes reached a certain threshold, or only to taxpayers with § 57 tax preferences, it could have easily drafted the statute to achieve that result.  Instead, as the tax court correctly held, the statute's plain language unequivocally reaches the Klaassens, and our inquiry is therefore complete.  While the law may result in some unintended consequences, in the absence of any ambiguity, it must be applied as written.  It is therefore from Congress that the Klaassens should seek relief.

**B.**

As their second, alternative, point of error, the Klaassens contend that applying the AMT provisions to them violates their First Amendment rights, as well as their equal protection and due process rights.  First, the Klaassens contend that, by disallowing the personal exemptions for their children, the statute impermissibly burdens their free exercise of religion.[4]  Second, they contend that their equal protection and due process rights are violated, because the statute deprives them of full deductions for medical and local taxes, whereas those

_____

[3]In 1993 amendments, Congress raised this amount from $40,000 to $45,000.  See Pub. L. 103-66, § 13203(b), 107 Stat. 312, 462.

[4]The Klaassens are members of the Reformed Presbyterian Church of North America.  As part of their religious beliefs, they are opposed to any form of birth control.  See Appellant's Br. at 10-11.

deductions are allowed for families with similar incomes, but fewer than eight children.

Tax legislation carries a "presumption of constitutionality," Regan v. Taxation With Representation of Washington, 461 U.S. 540, 547 (1983) (citations omitted), and legislatures have considerable latitude in creating classifications and distinctions in the tax statutes. Id. However, we also recognize that the First Amendment's Free Exercise Clause is "an absolute prohibition against governmental regulation of religious beliefs." Bob Jones Univ. v. United States, 461 U.S. 574, 603 (1983). Nonetheless, the fact that a generally applicable—but neutral—law "may have the effect of making the observance of some religious beliefs more expensive does not render the statute unconstitutional under the First Amendment." Black v. Commissioner, 69 T.C. 505, 510 (1977) (citing Braunfeld v. Brown, 366 U.S. 599, 605-07 (1961)); see also United States v. Lee, 455 U.S. 252, 257-258 (1982). Moreover, deductions are a matter of legislative grace. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Thus, a taxpayer may overcome the presumption of constitutionality "only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes." Madden v. Kentucky, 309 U.S. 83, 88 (1940).

In the present case, the Klaassens do not contend that the AMT's classification are grounded in religion. Rather, they contend that one of the effects of the statute is to burden their exercise of religion in violation of the First Amendment.[5] However, the Supreme Court has clearly instructed that such contentions must be viewed with great care.[6] Moreover, "even a substantial burden would be justified by the 'broad public interest in maintaining a sound tax system,' free of 'myriad exceptions flowing from a wide variety of religious

_____

[5]The Klaassens do not specifically raise their argument under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb (RFRA). However, even if we assumed that the RFRA is constitutional as to the federal government, and that it applies in this case, our analysis would not change, since RFRA standards are to be read consonantly with Supreme Court decisions prior to Employment Div., Dep't of Human Resources v. Smith, 494 U.S. 872 (1990). See 42 U.S.C. § 2000bb(b); S. Rep. No. 1030111 at 9; H.R. Rep. No. 103-88 at 21 (1993); see also Adams v. Commissioner, No. 98-7200, --- F.3d ----, 1999 WL 111126, (3rd Cir. Mar. 4, 1999).

[6]As the Court noted in Braunfeld v. Brown, 366 U.S. 599, 606 (1961):

To strike down, without the most critical scrutiny, legislation which imposes only an indirect burden on the exercise of religion, i.e., legislation which does not make unlawful the religious practice itself, would radically restrict the operating latitude of the legislature. Statutes which tax income and limit the amount which may be deducted for religious contributions impose an indirect economic burden on the observance of the religion of the citizen whose religion requires him to donate a greater amount to his church; statutes which require the courts to be closed on Saturday and Sunday impose a similar indirect burden on the observance of the religion of the trial lawyer whose religion requires him to rest on a weekday. The list of legislation of this nature is nearly limitless.

beliefs.'" Hernandez v. Commissioner, 490 U.S. 680, 699-700 (1989) (quoting Lee, 455 U.S. at 260).

Accordingly, we agree with the tax court's ruling. The uniform application of the AMT provisions furthers a compelling governmental interest, and we therefore conclude that it does not violate the Free Exercise Clause of the First Amendment.

For similar reasons, we find that the AMT provisions "bear a rational relation to a legitimate governmental purpose." Regan, 461 U.S. at 547; see also Okin, 808 F.2d at 1341-42; Austin v. United States, 611 F.2d 117, 119-20 (5th Cir. 1980). Consequently, we find no equal protection or due process violation.

AFFIRMED.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge

No. 98-9035, David R. Klassen and Margaret J. Klassen v. Commissioner of
Internal Revenue.

**KELLY**, Circuit Judge, concurring.

Although I agree with the court that the taxpayers cannot prevail on the theories advanced, we are not precluded from examining the legislative history of the alternative minimum tax (AMT), despite the clarity of the statute. See Train v. Colorado Public Interest Research Group, 426 U.S. 1, 10 (1976); Miller v. Commissioner, 836 F.2d 1274, 1281-83 (10th Cir. 1988). The legislative history supports an argument that the original purpose of the AMT, one of the more complex parts of the Internal Revenue Code, was to insure that taxpayers with substantial economic income pay a minimum amount of tax on it. See S. Rep. No. 97-494 (1982), reprinted in 1982 U.S.C.C.A.N. 781, 876;[1] S. Rep. No. 99-313, at 518 reprinted in 1986-3 C.B. 518. The regular income tax may be insufficient to achieve that objective because it favors certain types of income and allows deductions, exclusions and credits for certain types of expenses.

---

[1] The committee has amended the present minimum tax provisions applying to individuals with one overriding objective: no taxpayer with substantial economic income should be able to avoid all tax liability by using exclusions, deductions and credits. Although these provisions provide incentives for worthy goals, they become counterproductive when individuals are allowed to use them to avoid virtually all tax liability. The ability of high-income individuals to pay little or no tax undermines respect for the entire tax system and, thus, for the incentive provisions themselves.

For a variety of reasons, the number of moderate income taxpayers subject to the AMT has been steadily increasing. From a tax compliance and administration perspective, many of these taxpayers simply are unaware of their AMT obligations. If aware, they probably would need the assistance of a tax professional to comply with the separate rules and computations (apart from regular tax) and additional record keeping essential for the AMT. From a fairness perspective, many of these taxpayers have not utilized I.R.C. § 57 preferences (or other more arcane AMT adjustment items) to reduce regular taxable income but are caught up in the AMT's attempt to impose fairness. That certainly seems to be the case here. In the interest of progressivity, the regular tax already reduces or phases out itemized deductions and personal exemptions based upon income, see, e.g., I.R.C. § 67(a) (miscellaneous itemized deductions), § 68 (overall reduction of itemized deductions), § 151(d)(3) (phaseout of personal exemptions); § 213(a) (medical and dental expenses deduction only for amounts beyond 7.5% floor); surely Congress never intended a family of twelve that still qualified for these items under the regular tax to partly forfeit them under the AMT.

That said, we must apply the law as it is plainly written, despite what appears to be the original intent behind the AMT. As the tax court has explained, neither the statutory language nor unequivocal legislative history support the argument that the AMT is limited to individuals with tax preferences. See

<u>Huntsberry v. Commissioner</u>, 83 T.C. 742, 747-48 (1984).  This is particularly true given the Congressional power to raise revenue.  <u>See</u> <u>Okin v. Commissioner</u>, 808 F.2d 1338, 1341-42 (9th Cir. 1987).  The solution to this inequity, whether it be (1) eliminating itemized deductions and personal exemptions as adjustments to regular taxable income in arriving at alternative minimum taxable income, (2) exempting low and moderate income taxpayers from the AMT, (3) raising and indexing the AMT exemption amount, or (4) some other measure, must come from Congress, as the tax court rightly concluded.  <u>See</u> <u>Klaasen v. Commissioner</u>, 1998 WL 352260 (T.C. Memo. 1998-241).