T.C. Summary Opinion 2003-75

UNITED STATES TAX COURT

JIMMY L. AND NITA N. THOMPSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1365-02S.               Filed June 12, 2003.

Jimmy L. and Nita N. Thompson, pro sese.

<u>Horace Crump</u>, for respondent.

BEGHE, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463 of the Internal Revenue Code in effect
when the petition was filed.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in
effect for the year in issue.  The decision to be entered is not
reviewable by any other court, and this opinion should not be
cited as authority.

Respondent determined petitioners had a $3,123.50 Federal income tax deficiency for 1998, attributable primarily to the alternative minimum tax (AMT) under section 55(a). Following petitioners' concession of the non-AMT issues, the issues for decision are whether petitioners are liable for the AMT for 1998 and whether petitioners are relieved of that liability by a "no change" letter they received from respondent.

Issue 1. Alternative Minimum Tax

Petitioners timely filed their 1998 Federal joint income tax return and reported adjusted gross income of $82,234. On Schedule A, Itemized Deductions, petitioners claimed total itemized deductions of $28,839. The bulk of these deductions-- $24,505--was attributable to miscellaneous itemized deductions-- $21,055 (unreimbursed expenses incurred and paid by petitioner wife in earning employee wage income as an "educational consultant")--and deductions for State and local taxes--$3,450. Subtracting the total itemized deductions, petitioners' reported tax table income was $53,395. After further deduction for personal exemptions of $16,200, petitioners' taxable income for the 1998 taxable year was $37,195. On that amount of taxable income, petitioners reported regular income tax liability (before credits) of $5,576 (after credits $2,576). Petitioners did not

file Form 6251, Alternative Minimum Tax--Individuals, or otherwise report any AMT liability on their 1998 income tax return.

In addition to the tax calculated under the normal rates, it is sometimes necessary for a taxpayer to pay the AMT; petitioners overlooked that their taxable year 1998 is one of those times.

Section 55(a) imposes the AMT on noncorporate taxpayers equal to the excess of the "tentative minimum tax" over the "regular tax" for the taxable year. The term "regular tax" means the "regular tax liability for the taxable year (as defined in section 26(b))". Sec. 55(c)(1). Section 55(b)(1)(A)(i) provides that the tentative minimum tax is 26 percent of so much of the alternative minimum taxable income (AMTI) that does not exceed $175,000 as exceeds the exemption amount of $45,000. Section 55(b)(2)(A) and (B) defines AMTI as the taxable income of the taxpayer for the taxable year--determined with the adjustments provided for in sections 56 and 58, and increased by the items of tax preference described in section 57. Section 56(b)(1)(A)(i) and (ii) and (E) provide that in determining a taxpayer's AMTI, no deductions shall be allowed for miscellaneous itemized deductions (as defined in section 67(b)), State and local taxes under section 164(a), and personal exemptions under section 151. The effect of the AMT provisions is that those deductions, which were allowed in computing petitioners' taxable

income for the purpose of their regular tax liability, must be added back for the purpose of computing AMTI and their AMT liability.

Respondent examined petitioners' 1998 income tax return and made some minor adjustments. These adjustments reduced total itemized deductions from $28,839 to $27,505, and increased petitioner's income tax liability shown on their return from $5,576 (after credits, $2,576) to $5,779 (after corrected credits, $3,480.50). But respondent didn't stop there. Respondent then determined that petitioners were subject to the AMT because itemized deductions and State and local taxes--$24,505--and personal exemptions--$16,200--must be added back to determine AMTI.

The deficiency notice computed petitioners' AMT as follows: Starting with the corrected taxable income, $38,529, and adding to that the deductions claimed for (1) miscellaneous itemized deductions ($21,055), (2) State and local taxes ($3,450), and (3) personal exemptions ($16,200), petitioners' AMTI was determined to be $79,234. Sec. 56(b)(1)(A), (E). Because petitioners' AMTI of $79,234 exceeded by $34,234 the $45,000 exemption amount allowed by section 55(d)(1)(A)(i), petitioners' tentative minimum tax was computed as 26 percent of the excess, or $8,901. Sec.

55(b)(1)(A). The amount of the corrected regular tax being $5,779, respondent determined, pursuant to section 55(a), that petitioners are liable for AMT of $3,122.

Petitioners argue that the AMT is unfair because it subjects them to double taxation. The Court would observe that application of the AMT to petitioners' 1998 income does not subject them to double taxation; what the AMT does is defeat petitioners' reasonable expectations by depriving them of most of the tax reduction their allowable personal exemptions, miscellaneous itemized deductions, and State and local taxes would otherwise entitle them to. Although the AMT was originally enacted by Congress "to remedy taxpayer distrust of the system growing from large numbers of taxpayers with large incomes who were paying no taxes", Okin v. Commissioner, 808 F.2d 1338, 1342 (9th Cir. 1987), affg. T.C. Memo. 1985-199, petitioners are part of the growing number of middle-income people already paying income tax whose liability therefor is being increased by the AMT. See, e.g., Editorial, "Fix a Real Tax Problem", Wash. Post, May 28, 2003, at A18; Herman, Tax Report, "An Ignored Time Bomb: Alternative Minimum Tax", Wall St. J., May 15, 2003, at D2. However, it remains well established that the AMT's dilution of otherwise available tax benefits does not invalidate the AMT.[1]

---

[1] Cf. Job 1:21 (King James) ("the Lord gave, and the Lord hath taken away; blessed be the name of the Lord").

See, e.g., <u>Okin v. Commissioner</u>, <u>supra</u>, (income averaging); <u>Huntsberry v. Commissioner</u>, 83 T.C. 742, 749-751 (1984) (jobs tax credit); <u>Freeman v. Commissioner</u>, T.C. Memo. 2001-254 (miscellaneous itemized deductions), affd. 56 Fed. Appx. 842 (9th Cir. 2003); <u>Keese v. Commissioner</u>, T.C. Memo. 1995-416 (foreign tax credit); <u>Bettner v. Commissioner</u>, T.C. Memo. 1991-453 (long-term capital gain deduction).

As the Court said in <u>Freeman v. Commissioner</u>, <u>supra</u>, "even if we agreed with petitioners that the application of the alternative minimum tax produces an inequitable result in this case, it is not for us to change that result.  It is well established that such an equitable argument cannot overcome the plain meaning of the statute."

Issue 2.  "No Change" Letter

Petitioners raised another issue after their petition was filed.  Petitioners claim they received a "no change" letter dated July 1, 2002, stating that they did not owe additional tax for the year at issue.  Respondent's position is that the letter was sent to petitioners to notify them that a premature assessment had been abated.[2]

Petitioners were required by section 6213(a) to file their

---

[2]Respondent's "no change" letter of July 1, 2002, to petitioner wife was followed by respondent's letter of Dec. 9, 2002, to petitioner husband, which more clearly explained that the premature assessment had been abated.

petition by November 26, 2001. The petition was postmarked October 26, 2001, but was filed with the Tax Court on January 16, 2002. Since the petition was not filed with the Tax Court until well after November 26, 2001, it appeared that petitioners had defaulted in failing to file a petition to the Court in response to the notice of deficiency and respondent assessed the deficiency. Once notified by the Court that petitioners had filed a timely petition, respondent notified petitioners that the assessment was abated. All this happened during the time that mail sent to the Court in Washington, D.C. was delayed because of measures to counteract the anthrax mail threat. The delay caused by the anthrax mail threat accounts for the lapse in time between the mailing of the petition and the filing of the petition with the Tax Court.

In any event, it is well established that a "no change" letter, which is not a closing agreement, does not prevent the Government from reexamining the taxpayer's return and determining a deficiency. See Miller v. Commissioner, T.C. Memo. 2001-55. The same result also must obtain in the case at hand, in which the purported "no change" letter was issued after respondent had issued the statutory notice.

In order to give effect to our conclusions herein,

Decision will be entered

for respondent.